In re Daniel R. LAUSIER and Linda A. Lausier, Debtors/Plaintiffs,

v.

Thomas L. GOODWIN, Trustee,

and

Madawaska Federal Credit Union, Defendants.

Bankruptcy No. 180–00065.
Adv. No. 180–0069.

United States Bankruptcy Court,
D. Maine.

Dec. 11, 1980.

Alfred E. LaBonty, Jr., Madawaska, Me., for debtors/plaintiffs.

Thomas L. Goodwin, Trustee, Houlton, Me., pro se.

L. James Lavertu, Madawaska, Me., for defendant Madawaska Federal Credit Union.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

On October 3, 1978, debtors borrowed $18,939.28 from Madawaska Federal Credit Union [credit union], contemporaneously executing a promissory note, a first real estate mortgage covering a lot of land [Crestwood Avenue lot],[1] and a security agreement granting a purchase–money security interest in a 1978 Young American mobile home in favor of the credit union. The debtors insist that the mortgaging of the Crestwood Avenue lot upon which the mobile home was later situated constituted a consumer credit transaction within the meaning of Title 9–A, Maine Revised Statutes Annotated, section § 7–117(1)[2] in that

---

1. The lot was purchased three months earlier.

2. Tit. 9–A M.R.S.A. § 7–117 reads as follows:

1. Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired on any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the 3rd business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this Article, whichever is later, by notifying the creditor, in accordance with regulations of the administrator, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the administrator, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the administrator, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

2. When an obligor exercises his right to rescind under subsection 1, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 10 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does

a security interest was acquired on real property which both parties expected would be used as the residence of the debtors. Consequently, the debtors claim an outstanding right to rescind the real estate mortgage,[3] inasmuch as no notice of their right of rescission was provided.[4] The credit union denies that notice of the right of rescission was required, for the reason that it acquired "a first lien against a dwelling to finance the acquisition of that dwelling."[5]

The term "dwelling" is not defined by the Maine Consumer Credit Code. The Federal Truth in Lending Act defines "dwelling" as "a residential–type structure *which is real property* . . . ."[6] At the time of the execution of the real estate mortgage, the mobile home was not on the Crestwood Avenue lot. The debtors would have the court determine that the mortgage deed did not create a lien in a "dwelling" as the land was vacant and unimproved at the time, and that, assuming arguendo that the vacant Crestwood Avenue lot was a dwelling within the meaning of the exception, the lien granted the credit union was not given as consideration for the financing of the acquisition of that "dwelling."

There is no case law of which the court is aware interpreting section 7–117 of the Maine Consumer Credit Code. The credit union did not finance the acquisition of the Crestwood Avenue lot. Instead, the credit union financed acquisition of the mobile home, which constituted personal property, albeit acquiring a lien on the real property as additional security therefor. Under these circumstances notice of the right of rescission was required.

Upon entry of the order for chapter 7 relief on March 6, 1980, the debtors' right of rescission became property of the estate within the meaning of Bankruptcy Code § 541(a)(1).[7] It is the duty of the trustee in bankruptcy to collect and reduce to money all property of the estate.[8] On March 6, 1980, the debtors' right of rescission became exercisable exclusively by the trustee in bankruptcy. The trustee in bankruptcy was made a party defendant in these adversary proceedings to determine the validity of the credit union lien, but failed to appear, answer, or otherwise respond and was in due course defaulted. The court has authorized sale of the subject real estate on request of the debtors and the credit union. Sale effectively cuts off any right of rescis-

---

not take possession of the property within 10 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

3. Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this Article by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

4. The administrator may, if he finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

5. This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling.

6. An obligor's right to rescission shall expire 3 years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwith-

standing the fact that the disclosures required under this section or any other material disclosures required under this Article have not been delivered to the obligor.

3. *Id.*

4. *Id.*

5. *Id.*

6. 12 CFR § 226.2(v). (*Emphasis added.*)

State laws inconsistent with the Federal Truth in Lending Act are superseded. *See* 15 U.S.C.A. § 1610, 12 CFR § 226.6. It seems appropriate, therefore, in the absence of a state–law definition, that the federal definition be consulted in circumstances involving a closely analogous application of state law.

7. Title 11 United States Code section 541(a)(1) includes within the definition of property of the estate "all legal or equitable interests of the debtor in property as of the commencement of the case."

8. Bankruptcy Code § 704(1).

sion under both the Maine Consumer Credit Code [9] and the Truth in Lending Act.[10] The trustee in bankruptcy having failed to make timely exercise of the debtors' right of rescission or to oppose the authorization to sell, the real estate mortgage remains in all respects valid and enforceable.

The challenge to the formal sufficiency of the filed financing statement unnecessarily confuses the issue. The rights of the secured party vis–a–vis the debtor are not dependent on proof of perfection. The security interest of the credit union became enforceable against the debtors immediately upon their written grant of a purchase–money security interest in the mobile home on October 3, 1978.[11] Since the rights of the debtors and the credit union *inter se* are unaffected thereby and since the rights of third parties are not involved [the trustee in bankruptcy having defaulted], the court need not reach the issue of perfection.

The security interest in the mobile home and the lien on the Crestwood Avenue lot are valid and enforceable. On the basis of the stipulation filed by the parties, the security interest and mortgage secure an outstanding indebtedness as at August 4, 1980 in the amount of $19,533.64, inclusive of principal and interest, with per diem interest since August 4, 1980 at $6.00 until payment is made. In the event that the sale produces net proceeds in excess of the amount herein determined due the credit union, the debtors may initiate proceedings to recover the escrowed balance as exempt property. Enter order.

---

**9.** 9–A M.R.S.A. § 7–117(6).

**10.** 12 CFR § 226.9(h).

**11.** 11 M.R.S.A. § 9–203(1).