**Ree CLAY and Ruby Chivers, Plaintiffs,**

v.

**Iver R. JOHNSON and, Marvin Bilfeld, doing business as Davenport Construction Company Defendants.**

No. 97 C 6007.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 1, 1998.

---

Charles H. Lee, Edelman & Combs, Chicago, IL, for Plaintiffs.

Thomas G.A. Herz, Jr., The Law Offices of Thomas G.A. Herz, Jr., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

Ree Clay and Ruby Chivers (collectively "Plaintiffs") instituted this action under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (1998), against Iver R. Johnson and Marvin Bilfeld, d/b/a Davenport Construction Co. (collectively "Defendants"), alleging violations of TILA and seeking rescission of their transactions with Defendants. Plaintiffs now bring a motion for partial summary judgement on the issue of Defendants' liability under TILA. For the following reasons the Court holds that Defendants failed to properly disclose the payment schedule as required by TILA and grants Plaintiffs' motion for partial summary judgment.

## ·I. BACKGROUND

### A. The Parties.

Ree Clay. ("Clay") and Ruby Chivers ("Chivers") are sisters who reside in a home at 4633 W. 177th St., Country Club Hills, IL, 60478. (Pls.' Local Rule 12(M) Statement of Material Facts ("Pls.' 12(M)") ¶ 2.) Clay is an owner of the home and Chivers had no ownership interest in the home at the time of the transaction. (Pls.' 12(M) ¶ 2; Defs.' Local Rule 12(N) Statement of Material Facts ("Defs.' 12(N)") ¶ 2.) Marvin Bilfeld ("Bilfeld") is an individual who does business as Davenport Construction Company ("Davenport"). (Pls.' 12(M) ¶ 3.) Plaintiffs executed a series of retail installment contracts and mortgages to finance the purchase of home improvements from Davenport. (Pls.' 12(M) ¶ 5.) Davenport was the obligee under the retail installment contracts, but promptly assigned them to defendant Iver Johnson ("Johnson"). Johnson was the mortgagee. (Pls.' 12(M) ¶ 4–5.)

### B. The Transactions Between the Parties.

On or about February 11, 1995, Plaintiffs executed a retail installment contract and mortgage to finance the purchase of home improvements. (Pls.' 12(M) ¶ 5.) Davenport was the obligee under the retail installment contract, but promptly assigned it to Johnson. Johnson was the mortgagee. (Pls.' 12(M) ¶ 5.) Around July 10, 1995, Plaintiffs executed a second retail installment contract and mortgage to finance the remodeling of a bathroom and basement by Davenport. (Pls.' 12(M) ¶ 7.) Again, Davenport assigned this contract to Johnson. (Pls.' 12(M) ¶ 7.) A short time later on July 15, 1995, only plaintiff Clay executed a third retail installment contract and mortgage to finance the remodeling of Plaintiff's kitchen and other improvements. (Pls.' 12(M) ¶ 8.) Davenport also assigned this contract to Johnson. (Pls.' 12(M) ¶ 8.)

On each of the home improvement retail installment contracts there is a box labeled the "Federal Truth–In–Lending Disclosure Statement" which is known as the "Federal Box." In this box there are a number of blanks to be filled in, in order to comply with TILA. On each of the contracts, the blanks have all been completed. The critical issue in this case is the fact that Defendants filled in "30 days from completion" instead of an exact date in the blank left for "When Payments Are Due, monthly beginning." Plain-

tiffs contend that Defendants' failure to provide a specific date, or an estimated date with the notation that it is an estimate, violates TILA. Defendants disagree and argue that the disclosure was sufficient.

At some point around completion, when the due dates of the first installments were established, they were typed into an area further down on the contract forms. (Defs.' 12(N) Ex. 2.). Plaintiffs also received a proposal outlining the work to be done and dated which Plaintiffs accepted. (Defs.' 12(N) Ex. 2.) Bilfeld also provided Plaintiffs with a Notice of Right to Cancel which informed Plaintiffs of their right to cancel the contract within 3 days of the transaction, disclosures, or receipt of notice; informed Plaintiffs of additional rights; and informed Plaintiffs of the steps that must be taken in order to cancel. (Defs.' 12(N) Ex. 2.) Plaintiffs also signed this. Upon completion of the work, Davenport obtained an executed completion certificate from Plaintiffs confirming the value of the work performed. (Defs.' 12(N) Ex. 2.) Approximately three weeks to a month after each contract, Johnson sent Plaintiffs a letter informing them that he had purchased the contract and mortgage from Davenport and informing the plaintiffs of the means by which they should make their monthly payments. This letter also informed Plaintiffs that they should begin making their payments 30 days after signing the completion certificates. (Defs.' 12(N) Ex. 2.) Along with the letter, Johnson provided the plaintiffs with a payment booklet. (Defs.' 12(N) Ex. 2.)

From April through October of 1995, Plaintiffs made their regular monthly payments on the first contract; however, after that time, they failed to make any payments on any of their contracts with Defendants.

### C. Rescission and Bankruptcy.

On August 21, 1997, Plaintiffs' counsel notified Davenport and Johnson that Plaintiffs were rescinding the transactions. (Pls.' 12(M) ¶ 13.) This letter stated that "Ree Clay and Ruby Chivers rescind any obligation to you for failure to comply with the Truth in Lending Act." (Defs.' 12(N) Ex. C.) On August 26, 1997 Ree Clay filed for bank-

ruptcy under Chapter 13 of the Bankruptcy Code. (Defs.' 12(N) Ex. A.)

### II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

When reviewing the record on summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *See Larimer v. Dayton Hudson Corp.,* 137 F.3d 497, 500 (7th Cir. 1998). To avert summary judgment, however, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### III. THE TRUTH IN LENDING ACT

#### A. TILA Is Strictly Enforced.

TILA was enacted by Congress to "avoid the uninformed use of credit." *Mourning v. Family Publications Serv. Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). "[T]he Truth In Lending Act was designed in large part to protect consumers from unscrupulous creditors and inaccurate and unfair billing and credit card practices." *Streit v. Fireside Chrysler–Plymouth, Inc.,* 697 F.2d 193, 197 (7th Cir.1983). The language of TILA reveals its purpose as follows: "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms avail-

able to him and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601 (1998).

The Seventh Circuit has enunciated a standard of "strict compliance" with TILA provisions.

It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations. Thus, while it may be true, in some sense, as the creditors have argued, that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts.

*Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 613 (7th Cir.1982). However, this standard of strict compliance has its limits. *Streit*, 697 F.2d at 196.

[I]t is not necessary or appropriate to hold creditors absolutely liable for every noncompliance and to disregard completely the factual situation out of which the claim has arisen. We believe that Congress would not have intended to impose liability on a creditor for a technical violation where there never was a transaction (beyond entering into the financing agreement) because of the consumer's complete failure to fulfill his obligations under the contract.

*Id.*

■ TILA "must be liberally construed in favor of the consumer." *Rowland v. Magna Millikin Bank*, 812 F.Supp. 875, 878 (C.D.Ill.1992)(citing *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir.1982)). This means that " 'TILA requirements are enforced by imposing a sort of strict liability in favor of consumers who have secured financing through transactions not in compliance with the terms of the Act. It is strict liability in the sense

that absolute compliance is required and even technical violations will form the basis for liability.' " *Rowland*, 812 F.Supp. at 878 (citing *Shepeard v. Quality Siding & Window Factory*, 730 F.Supp. 1295, 1299 (D.Del. 1990)).

■ Plaintiffs need not show that they were misled or suffered any actual damages as a result of even a purely technical violation. *Brown*, 686 F.2d at 614. "It is well settled ... that a borrower need not have been so deceived to recover the statutory penalty." *Id.* (citing *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir.1980); *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir.1979)).

## B. This Court Has Jurisdiction to Hear This Suit.

■ The parties agree that TILA governs the transactions at issue. Davenport and Johnson are creditors as defined by TILA because they engaged in at least the minimum number of transactions of five per year as required by TILA. (Defs.' 12(N) ¶¶ 9–10.) These transactions are consumer credit transactions as defined by TILA because credit was extended to an individual for home improvements to the individual's residence. (Pls.' 12(M) ¶ 11.) Through these agreements, Davenport and Johnson took a security interest in the principal residence of Clay and Chivers. (Pls.' 12(M) ¶ 13.)

■ As a threshold matter, the Court must address the argument that it does not have jurisdiction to hear this case. Defendants argue that the exclusive jurisdiction is in the bankruptcy court in which Clay has filed a Chapter 13 proceeding. Defendants cite two cases to support their argument. *In re Pitre*, 11 B.R. 777 (Bankr.N.D.Ill.1981), involved a TILA claim which the debtors filed in bankruptcy court. The court ruled on the merits of the claim without specifically addressing the jurisdictional issue. In *Lausier v. Goodwin*, 7 B.R. 476 (Bankr.D.Me. 1980), the court addressed the merits of the party's Maine Consumer Credit Code and TILA claims without addressing the jurisdictional issue. *Id.* Neither of these cases held that the bankruptcy courts have exclusive

jurisdiction over TILA claims related to the bankruptcy proceedings.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Truth In Lending Act, 15 U.S.C. § 1640(1998). Furthermore, any claims in the bankruptcy court involving other federal laws are subject to withdrawal to a district court pursuant to 28 U.S.C.A. § 157(d)(1998). The Court is hard pressed to find that the bankruptcy court has exclusive jurisdiction of a claim possibly subject to withdrawal.

Furthermore, plaintiff Chivers has not filed for bankruptcy and thus was free to file her action in this court. Under these circumstances, the Court has jurisdiction to hear this case.

## C. Ownership of the Property at Issue and Right to Rescind.

At issue in this case is a right that TILA provides to consumers, that is the right to rescind. TILA states in pertinent part:

> Except as otherwise provided in this section ... the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Board, of his intentions to do so.

15 U.S.C. § 1635(a) (1998). The Code of Federal Regulations also discusses the right to rescind and relevant time limitations.

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required ... or delivery of all material disclosures whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation ....

12 C.F.R. § 226.23(a)(3)(1998).

■ Defendants argue that Plaintiff Chivers cannot exercise her right of rescission because she does not own the property which is the subject of the security interest. Plaintiffs agree but argue that Clay is an owner and, therefore, she can exercise the right of recission.

Regulation Z of TILA provides

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction
> ....

12 C.F.R. § 226.23(a)(1)(1998).

Therefore, regardless of Ruby Chivers' ownership status at the time of the transaction, it is undisputed that Ree Clay was an owner who can seek recission if she prevails.

## D. Payment Schedule Is a Material Disclosure.

Regulation Z of TILA also provides that "[t]he period within which the consumer may exercise the right to rescind runs for 3 business days from the last of 3 events: Consummation of the transaction. Delivery of all material disclosures. Delivery to the consumer of the required rescission notice." 12 C.F.R. pt. 226, supp. I, ¶ 23(a)(3)(1)(1998). The commentary goes on to discuss the material disclosures that must be made before the rescission period begins to run.

> Footnote 48 sets forth the material disclosures that must be provided before the rescission period can begin to run. Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature. Failure to give the other required disclosures does not prevent the running of the rescission period, although the failure may result in civil liability or administrative sanctions.

12 C.F.R. pt. 226, supp. I, ¶ 23(a)(3)(2)(1998). Footnote 48 provides a definition of "material disclosures."

> The term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment

schedule, and the disclosures and limitations referred to in § 226.32(c) and (d). 12 C.F.R. § 226.23(a)(3) n. 48 (1998).

■ Defendants argue that material disclosures means only annual percentage rate and no other disclosures listed in footnote 48. They assert that because they provided the annual percentage rate in the Federal Box they complied with the Act.

Defendants point out that the regulations specifically discuss the annual percentage rate and then go on to state that "[f]ailure to give the other required disclosures does not prevent the running of the rescission period." 12 C.F.R. pt. 226, supp. I, ¶ 23(a)(3)(2)(1998). From this Defendants argue that annual percentage rate is the only material disclosure which, if made, trigger the running of the rescission period. Furthermore, Defendants argue that "other required disclosures" are the remaining required disclosures listed in footnote 48 aside from the annual percentage rate and these are not material disclosures which prevents the running of the rescission period if not provided. This Court rejects Defendants' reading of the regulations because it is contrary to the clear language of the regulations.

First, Defendants' reading is contrary to the plain meaning of the words "material disclosures." The word is plural which inherently suggests that there is more than one material disclosure. Further, if the Federal Reserve Board intended that the annual percentage rate be the only material disclosure they would have said so precisely.

Second, to find Defendants' reading at all logical, it is necessary to ignore the first sentence of paragraph 23(a)(3)(2), which states that "Footnote 48 sets forth the material disclosures that must be provided before the rescission period can begin to run." 12 C.F.R. pt. 226, supp. I, ¶ 23(a)(3)(2)(1998). This refers the reader back to footnote 48 which clearly defines the term material disclosures to include far more than the annual percentage rate but also payment period and so on. Reading these two provisions together clearly shows that the failure to provide any disclosures listed in Footnote 48 prevents the running of the rescission period.

Finally, there is another logical explanation of the structure and language of paragraph 23(a)(3)(2). 12 C.F.R. pt. 226, supp. I, ¶ 23(a)(3)(2)(1998). The second sentence is simply an elaboration of the definitions provided in footnote 48 and is to inform the reader that, in addition to the material disclosures listed in footnote 48, the "variable rate feature" is also a material disclosure that the agency considers as falling within the scope of the term "annual percentage rate." The third sentence, although its placement leaves something to be desired, then refers back to the first sentence when it says "other required disclosures" meaning disclosures besides the "material disclosures" defined in footnote 48. These "other required disclosures" are the disclosures listed in 12 C.F.R. § 226.18 which include disclosures different from those listed in footnote 48, disclosures such as the identity of the creditor, prepayment, late payment, the security interest, and so on. 12 C.F.R. § 226.18 (1998).

■ In sum, Plaintiffs' reading of the regulations is the more logical reading. Payment schedule is a material disclosure. Thus the failure to properly disclose the payment schedule leads to a stay on the running of the rescission period. *See also Graves v. Tru-Link Fence Co.*, 905 F.Supp. 515, 521–22 (N.D.Ill.1995) (holding that payment schedule is a material disclosure; failure to disclose the payment schedule extended the rescission period).

### E. The Payment Schedule Was Not Disclosed Properly.

#### 1. "30 Days From Completion" Is Not a Disclosure Sufficient to Meet TILA's Requirement of the Disclosure of the Payment Schedule.

■ Defendants argue that they adequately disclosed the payment schedule in the Retail Installment Contract. In the Federal Boxes of the Retail Installment Contracts Defendants had written in that payments were due beginning "30 days from completion." Defendants argue that a disclosure in this form adequately complies with TILA.

The regulations discuss the specificity required in the material disclosures.

> If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.

12 C.F.R. § 226.17(c)(2)(i) (1998). Further, the regulations also elaborate on what is must be disclosed regarding the payment schedule. The regulations define the payment schedule as "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1998).

Judge Gettleman of this district has addressed the issue of adequately disclosing the payment schedule in a factually analogous case. *Graves v. Tru–Link Fence Co.*, 905 F.Supp. 515 (N.D.Ill.1995). In *Graves*, the plaintiff signed a proposal and a retail installment contract to purchase fencing. *Id.* at 518. The retail installment contract stated the annual percentage rate, finance charge, amount financed, total payments and cost. *Id.* It also specified a payment schedule as follows: "Your payment schedule will be a first payment of $124.78 and 35 payments of $124.78 beginning on [sic] 30 days from comp[letion]." *Id.*

The defendants in *Graves* made much the same argument relying on § 226.17 as the Defendants do in the present case. § 226.17 allows for an estimate in the event that the parties to the contract are unable to specify a exact date. 12 C.F.R. § 226.17(c)(2)(i)(1998). Judge Gettleman rejected the argument that "30 days from completion" is a sufficient estimate, stating:

> To comply with the statute and the regulation, defendant must disclose when payments should begin or, if it cannot do so (as appears to be the case with respect to the installation of fences [and other home improvements]), it should provide an estimated date of completion and "state that the disclosure is an estimate."

*Id.* at 522 (quoting *Rowland v. Magna Millikin Bank,* 812 F.Supp. 875 (C.D.Ill.1992)).

Applying *Graves* to the case at hand, it is apparent that the two cases are indistinguishable. Defendants in the present case used the same language to disclose the payment schedule, "30 days from completion," which the court in *Graves* found to be an insufficient disclosure. Further, it does not meet the requirements to be an estimate under because 12 C.F.R. § 226.17(c)(2)(1998) requires such disclosures to be noted as estimates.

*Rowland* also held that providing payments to begin a certain number of days from completion instead of stating an exact date on which payments should begin does not comply with the Act's requirement that the payment schedule must be disclosed. In *Rowland,* the plaintiffs and defendants entered into a retail installment contract for the purchase of windows. *Rowland,* 812 F.Supp. at 877. The plaintiffs' copy of the contract was almost illegible. *Id.* Further, it stated that payments were due "45 days after installation," but no exact date was given. *Id.* While, it is true that the contract was followed by a letter with legible disclosures, the court noted that the disclosures in that letter were incomplete. *Id.* at 879. Further, the court found

> that Defendant's failure to include a specific date stating when payments were due on Plaintiffs' copy of the contract, constitutes a failure to make a material disclosure. As previously noted, failure to disclose the payment schedule is a material non-disclosure, and the payment schedule disclosure requires that the timing of payments be revealed.

*Id.* at 880 (citing 12 C.F.R. § 226.18(g)). The Court holds that, as in *Rowland* and *Graves*, using "30 days from completion" instead of specifying an exact date as to when payments are to begin constitutes a failure to make a material disclosure.

**2. Providing the Plaintiffs with a Specific Beginning Date of Payments in Separate Documents or in Later Documents Is Insufficient.**

█ Defendants argue that Plaintiffs received all disclosures required by the TILA. At the time of the consummation of the

contracts Plaintiffs received a signed Proposal, a signed Retail Installment Contract, a signed Notice of Right to Cancel, and a signed Mortgage. Thereafter, Plaintiffs received a signed Completion Certificate, Payment Booklet, notification of the date when payments were to begin, and a Retail Installment Contract setting forth the date when the payments were to begin. However, the defendants' argument must fail for a number of reasons.

As noted above, one of the required disclosures under TILA is "number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6). Subsection (b) goes on to state that

> [e]xcept for the disclosures required by subsection (a)(1) of this section, all disclosures required under subsection (a) of this section and any disclosure provided for in subsection (b), (c), or (d) of section 1605 of this title shall be conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization.

15 U.S.C. § 1638(b)(1)(1998). The regulations also have the same requirement. "The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18." 12 C.F.R. § 226.17(a)(1) (1998). The regulations, however, have an additional requirement. "The terms 'finance charge' and 'annual percentage rate,' when required to be disclosed under § 226.18(d) and (e) together with a corresponding amount or percentage rate, shall be more conspicuous than any other disclosure, except the creditor's identity under § 226.18(a)." 12 C.F.R. § 226.17(a)(2) (1998).

Defendant argues that § 226.17(a)(1) only applies to the finance charge, annual percentage rate and amount financed because of § 226.17(a)(2). However, § 226.17(a)(1) would be redundant if it required no more than § 226.17(a)(2). The word "more" also

reinforces § 226.17(a)(1), that all disclosures must be conspicuous. § 226.17(a)(2) provides only that the disclosures listed therein must be "more conspicuous than any other disclosure." 12 C.F.R. § 226.17(a)(2) (1998). This subsection does not limit the terms of all of § 226.17 to only those three disclosures listed in § 226.17(a)(2), but means what it says, that those three disclosures must be more conspicuous than any others. Furthermore, § 226.17 specifically states that it applies to all disclosures required by this subpart which include the payment schedule.

The form in which defendants provided the disclosures is inadequate to meet the requirements of § 226.17 which requires the disclosures to be provided, at a minimum, in a single document and without any unnecessary information. This Court's interpretation of the regulation, that it requires disclosures to be in a single document, is supported by *Shepeard v. Quality Siding & Window Factory,* 730 F.Supp. 1295, 1300–1301 (D.Del.1990). In *Shepeard,* the parties first signed a cash agreement for siding work. *Id.* at 1297. The disclosure areas on this form were left largely blank. *Id.* About two weeks later, the parties entered a Lien Contract which contained numerous required disclosures but omitted several disclosures that had been included in the cash agreement. *Id.* The court held that the disclosures could not be provided in separate documents in that manner. *Id.* at 1300–01. Providing disclosures in separate documents does not meet the "grouped together" and "segregated" requirements of both the Act and the Regulations. Defendants did not provide their disclosures in a form that satisfies the requirements of TILA because they were not contained in the Federal Box. *See also Leathers v. Peoria Toyota–Volvo,* 824 F.Supp. 155, 158 (C.D.Ill.1993) ("Compliance with these regulations is satisfied when the creditor places all the disclosures on one side of one document (unless there is not enough room) or groups the disclosures together within the Federal Box.").

In addition, typing the due date of the first installment into a separate area on the retail installment contract at a time after

consummation of the transaction also does not constitute compliance for several reasons. First, the language of § 226.17 requires the disclosures to be "grouped together" and "segregated." 12 C.F.R. § 226.17(a)(1)(1998). One court has had the opportunity to discuss the meaning of these requirements and their relation to the Federal Box. *Marshall v. Security State Bank,* 121 B.R. 814, 816 (Bankr.C.D.Ill.1990). In *Marshall,* the plaintiffs received a loan from the defendant and the defendant secured that loan with an interest in the plaintiffs' vehicle. *Id.* at 815. Later the plaintiffs consolidated all of their loans with the defendant bank into a single loan but the agreement did not specifically disclose the security interest in the vehicle. *Id.* The court discussed whether the disclosures made in the Federal Box on the agreement embodying the later, consolidated loan met the requirements of TILA. *Id.* at 816.

> Section 226.17(a) of Regulation Z requires all the disclosures, including the disclosure of any security interest being given, to be in one location on the instrument. That location is commonly called the "Federal Box." Although the present requirements of Truth in Lending are the result of the Truth in Lending Simplification and Reform Act, they do not give creditors "Carte Blanche" to make the disclosures in any fashion a particular creditor may feel is appropriate. The Truth in Lending Act and Regulation Z, as simplified, still provide a format for disclosures to be used by all creditors so borrowers will be informed as to the nature of the transaction and be able to compare and shop for credit from various creditors. In this case the actual reference to the vehicle is outside the "Federal Box" and cannot be considered to be part of the required disclosures.

*Id.* Similarly, in the present case the disclosure of the payment beginning date was made outside the Federal Box. As such, in the words of the court in *Marshall,* it "cannot be considered to be part of the required disclosures." *Id. See also Leathers v. Peoria Toyota–Volvo,* 824 F.Supp. 155, 159–60 (C.D.Ill.1993) ("[T]he paragraph at the bottom of the contract ... is outside the disclosure statement within the Federal Box and

thus does not comply with the requirement that disclosures be grouped together."). In sum, the disclosure of the payment beginning date outside the Federal Box did not comply with TILA.

■ Further, providing the necessary disclosures either by typing them into the contract at a later time or by providing a completion certificate at a later time is insufficient because of the Act's timing requirements. Defendants argue that they made all required disclosures by notifying Plaintiffs of the payment beginning date after consummation of the transaction. Plaintiffs are correct when they argue that this is not sufficient. The language of the regulations does not permit later disclosures. "The creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b)(1998). The Act has a similar provision. "Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended." 15 U.S.C. 1638(b)(1)(1998). *See also Graves v. Tru–Link Fence Co.,* 905 F.Supp. 515, 519 (N.D.Ill.1995) ("TILA disclosures are required prior to the consummation of a credit transaction.") (citing *Clark v. Troy,* 864 F.2d 1261, 1263 (5th Cir.1989)). In sum, any disclosures made after the parties entered and signed the retail installment contract are not disclosures which meet the terms of TILA and its attendant regulations. Defendants' argument that, after consummation of the transaction, providing the Completion Certificate, Payment Booklet, notification of the date when payments were to begin, and revised Retail Installment Contract met the disclosure requirements of TILA must fail.

The Court is mindful that this may appear to be a harsh and ever technical result because at a later date Defendants did provide Plaintiffs with a retail installment contract which contained a precise first installment date in the body of the contract, an executed Completion Certificate which bears a precise completion date, and a payment booklet which sets forth exact payment due dates. Unfortunately for Defendants, these steps do not meet the regulations. As the Seventh Circuit has recently noted in *Benion v. Bank*

*One*, 144 F.3d 1056, 1059 (7th Cir.1998), the courts should defer to the Federal Reserve Board's highly detailed and technically precise regulations stating:

When an activity of a technical and specialized character is comprehensively regulated by an expert agency, as consumer credit disclosures are comprehensively regulated by the Federal Reserve Board (and no one doubts that this particular agency is a repository of genuine expertise), courts should generally leave the plugging of loopholes to the agency, lest the court's reparative efforts create confusion and disrupt the regulatory scheme.

*Id.* Therefore, Defendants are encouraged to raise this issue with the Federal Reserve Board to seek a revision of the regulatory scheme which is currently in place. Under the current regulations, Defendants have violated TILA and this Court defers to the Federal Reserve Board's comprehensive regulation of this issue.

### F. Plaintiffs Adequately Rescinded Their Contracts.

 Defendants argue that Plaintiffs did not adequately exercise their right of rescission because their rescission letter failed to specify which contract was being rescinded. However, 12 C.F.R. § 226.23(a)(2) allows for the consumer to exercise the right of rescission by simply notifying the creditor by written communication. "To exercise the right *to rescind, the consumer shall notify the* creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23 (1998). There are no further requirements in the regulations or the Act as to the form rescission must take.

There is limited case law which addresses the issue. Several cases have held that the filing of a complaint is proper written communication that fulfills the notice requirement of the Act. *Elliott v. ITT Corp.*, 764 F.Supp. 102, 105–06 (N.D.Ill.1991) (citing *Hunter v. Richmond Equity*, No. CV 85–P–2734–S, 1987 WL 109703, Slip. op. at 9 (N.D.Ala. Nov. 23, 1987)). However, the defendants in *Elliott* also argued that the complaint did not make an adequate recission demand. Conversely, the court held that the

language which demanded recission of "the transaction of each class member who elects rescission" was sufficiently clear for the purposes of TILA. *Id.* at 106. In the present case, Plaintiffs' letter stated that "You are hereby notified that Ree Clay and Ruby Chivers rescind any obligation to you for failure to comply with the Truth in Lending Act." As Plaintiffs point out, since they rescinded "any obligation" owed to Defendants, it would seem clear that this included all of the contracts they entered into with Defendants. This Court holds the "any obligation" language in the present case sufficiently met the notice requirements of the Act. Alternatively, the filing of plaintiffs' complaint was sufficient notice under TILA.

### G. Defendants Assert No Viable Affirmative Defenses.

 Defendants assert the equitable defense of unclean hands in that they allege that the Plaintiffs never had any intention of paying what they owed under the contract. TILA and the associated regulations provide for waiver of the consumer's right to rescind under only a very limited number of circumstances.

The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind.

12 C.F.R. § 226.23(e)(1)(1998). This is the only provision that allows for the waiver of any of the consumer's rights. There is no provision which allows for the waiver of the right to receive all disclosures. This implies that, under all circumstances except for the ones outlined in 12 C.F.R. § 226.23(e)(1), the consumer retains all of her rights under the Act including the right to rescind when she has not received all the required disclosures under the Act.

TILA explicitly provides for immunities and defenses as well. The delineated ex-

empted transactions are commercial transactions, transactions to securities or commodities accounts, credit transactions in excess of $25,000 which are not secured by real property or a person's principal dwelling, transactions under public utility tariffs, and transactions exempted by the Board on an individual case-by-case basis. 15 U.S.C.A. § 1603 (1998). As can be seen from that list, none of the exemptions apply to the case at hand. The Act also specifically lists the available defenses. Liability will not incur under the Act when a creditor corrects an error within sixty days of discovery and before an action is filed, when the violation was unintentional and as a result of a bona fide error, or when the creditor was acting in good faith compliance with a rule or regulation. 15 U.S.C.A. § 1640(b), (c), (f) (1998). Again, none of the defenses apply to the case at hand. The listing of defenses and exemptions would imply that no others are available. TILA also provides that all inconsistent state laws are preempted thus expressing that defenses based on state law are not available. 15 U.S.C.A. § 1610 (1998).

The cases that have had the opportunity to speak on the issue support this interpretation. In a Ninth Circuit case the defendants urged the court "to establish equitable discretion to vary the terms of TILA for borrowers less in need of protection." *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.1986). The court rejected this suggestion. *Id.* The court upheld the district court's holding that rescission was appropriate for technical violations of TILA and its regulations and held that courts should not assert equitable powers even in cases with unsympathetic facts. *Id.* *See also Luczak v. General Motors Acceptance Corp.*, 494 F.Supp. 210, 215 (W.D.N.Y. 1980) (deferring consideration of the "extent of liability" until after defendants had an opportunity to present their equitable defenses but still finding a violation of TILA).

Further, equitable considerations will come into play at remedy phase, thus Defendants need not be concerned that the courts will ignore equitable considerations altogether. *See, e.g., Rudisell v. The Fifth Third Bank*, 622 F.2d 243, 254, (6th Cir.1980) ("Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor.").

## IV. CONCLUSION

The Truth In Lending Act requires technical precision to comply with its terms. Defendants failed to properly set forth the payment schedule in the Federal Box. Because the court finds that the defendants committed a violation of the Truth In Lending Act, **the Court grants Ree Clay's and Ruby Chivers' motion for partial summary judgment against Iver R. Johnson and Marvin Bilfeld on the issue of liability. The parties are directed to meet and discuss how to proceed on the issue of the appropriate remedy prior to the next status conference.**