**Ree CLAY and Ruby Chivers,**
**Plaintiffs,**

v.

**Iver R. JOHNSON and, Marvin Bilfeld,**
**doing business as Davenport Con-**
**struction Company Defendants.**

No. 97 C 6007.

United States District Court,
N.D. Illinois,
Eastern Division.

June 7, 1999.

Charles H. Lee, Edelman & Combs, Chicago, for Plaintiffs.

Thomas G.A. Herz, Jr., The Law Offices of Thomas G.A. Herz, Jr., Chicago, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Ree Clay and Ruby Chivers (collectively "Plaintiffs") instituted this action under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (1998), against Iver R. Johnson and Marvin Bilfeld, d/b/a Davenport Construction Co. (collectively "Defendants"), alleging violations of TILA and seeking rescission of their 1995 home improvement transactions with Defendants. Plaintiffs brought a motion for partial summary judgement on the issue of Defendants' liability under TILA which the Court granted on October 1, 1998 on the grounds that Defendants failed to properly disclose the payment schedule as required by TILA. *Clay v. Johnson*, 22 F.Supp.2d 832 (N.D.Ill.1998). Defendants now bring a motion for reconsideration on the basis that on April 6, 1998, prior to the Court's October 1, 1998 decision, the Federal Reserve had issued a comment interpreting the regulations implementing TILA which supports the Defendants' position. The motion for reconsideration is denied on the grounds that the comment does not apply retroactively because the comment represents a change, and not a clarification, of existing law.

## I. BACKGROUND [1]

Throughout the course of 1995, Plaintiffs executed three retail installment contracts and corresponding mortgages to finance the purchase of home improvements. Davenport was the obligee under the retail installment contracts, but promptly assigned all three to Johnson. Johnson was the mortgagee. On each of the home improvement retail installment contracts there is a box labeled the "Federal Truth–In–Lending Disclosure Statement" which is known as the "Federal Box." In this box there are a number of blanks to be filled

1. The following facts are taken from the Court's opinion of October 1, 1998. That opinion provides a detailed account of the

in, in order to comply with TILA. On each of the contracts, the blanks have all been completed. However, Defendants filled in "30 days from completion" instead of an exact date in the blank left for "When Payments Are Due, monthly beginning." At some point around completion, when the due dates of the first installments were established, exact dates were typed into an area further down on the contract forms.

12 C.F.R. § 226.18(g) provides, "For each transaction, the creditor shall disclose the . . . [p]ayment schedule: The number, amounts, and timing of payments scheduled to repay the obligation." On October 1, 1998, this Court granted partial summary judgment in favor of Plaintiffs finding that Defendants committed a violation of § 226.18(g) and TILA by failing to include an exact date in the blank. *See Clay v. Johnson*, 22 F.Supp.2d 832 (N.D.Ill. 1998).

## II. THE MOTION FOR RECONSIDERATION

■ A proper basis for a motion for reconsideration is a change in law. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). That is the basis upon which Defendants' motion for reconsideration is brought before this Court.

Defendants' motion rests upon comment 18(g)–4 to Regulation Z, § 226.18(g) issued by the Federal Reserve Board on April 6, 1998 which reads as follows:

4. *Timing of Payments*

i. *General rule.* Section 226.18(g) requires creditors to disclose the timing of payments. To meet this requirement, creditors may list all of the payment due dates. They also have the option of specifying the "period of payments" scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "bi-weekly," and the calendar date that

factual background of this case. *See Clay v. Johnson*, 22 F.Supp.2d 832 (N.D.Ill.1998).

the beginning payment is due. For example, a creditor may disclose that payments are due "monthly beginning on July 1, 1998." This information, when combined with the number of payments, is necessary to define the repayment period and enable a consumer to determine all of the payment due dates.

ii. *Exception.* In a limited number of circumstances, the beginning payment date is unknown and difficult to determine at the time disclosures are made. For example, a consumer may become obligated on a credit contract that contemplates the delayed disbursement of funds based on a contingent event, such as the completion of home repairs. Disclosures may also accompany loan checks that are sent by mail, in which case the initial disbursement and repayment dates are solely within the consumer's control. In such cases, if the beginning-payment date is unknown the creditor may use an estimated date and label the disclosure as an estimate pursuant to § 226.17(c). Alternatively, the disclosure may refer to the occurrence of a particular event, for example, by disclosing that the beginning payment is due "30 days after the first loan disbursement." The information also may be included with an estimated date to explain the basis for the creditor's estimate. See Comment 17(a)(1)–5(iii).

Official Staff Interpretations of Regulation Z, 63 Fed.Reg. 16669, 16677 (1998) (now codified at 12 C.F.R. pt. 226, supp. I, comment 18(g)–4). This comment went into effect on March 31, 1998. 63 Fed.Reg. at 16669, Defendants argue that the comment dictates a different result on the prior motion for summary judgment.

## A. DEFERENCE TO THE FEDERAL RESERVE BOARD

■ The Federal Reserve Board has been designated as the primary authority for interpreting and applying TILA. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). "The Court has often repeated the general proposition that considerable respect is due 'the interpretation given [a] statute by the officers or agency charged with its administration.' An agency's construction of its own regulations has been regarded as especially due that respect." *Id.* (quoting *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); other citations omitted). This is even more true under TILA.

> This traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in "setting the statutory machinery in motion." *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). As we emphasized in *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA. The Act is best construed by those who gave it substance in promulgating regulations thereunder.

*Milhollin,* 444 U.S. at 566, 100 S.Ct. at 797. In sum, Courts are required to defer to Board interpretations of TILA and its accompanying regulations. These interpretations can be found in the commentary on Regulation Z. 12 C.F.R. pt. 226, app. C.

The Court acknowledges that it is appropriate to defer to the Board's interpretation of the regulations. As a result, the Court concludes that comment 18(g)–4 represents current law. However, the Court's inquiry does not end there. Because the events at issue in the present case all occurred in 1995, the question remains of whether the commentary adopted by the Federal Reserve Board in April of 1998 and effective March 31, 1998 applies retroactively to the home improvement transactions at issue in this case.

## B. STANDARD FOR APPLYING THE COMMENT RETROACTIVELY

The Court starts from the premise that "[r]etroactivity is not favored in the law."

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988).[2] *Pope v. Shalala,* 998 F.2d 473 (7th Cir.1993), provides guidelines for when an interpretation of a rule or statute is applied retroactively.

[A] rule changing the law is retroactively applied to events prior to its promulgation only if, at the very least, Congress expressly authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). A rule simply clarifying an unsettled or confusing area of the law, on the other hand, does not change the law, but restates what the law according to the agency is and has always been: "It is no more retroactive in its operation than is a judicial determination construing and apply a statute to a case in hand." *Manhattan General Equip. Co. v. Commissioner,* 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936).

*Id.* at 483.

■ Courts look to the intent and interpretation of the promulgating agency to determine whether a statement made by that agency is a change in the law. *Id.* However, as the Seventh Circuit has pointed out, those indicators are not dispositive; otherwise, an agency could make any substantive change apply retroactively merely by referring to such a new interpretation as a clarification. *Id.* Consequently, in such a situation it is appropriate to review earlier positions of the agency to verify that the so-called clarification is not a substantive change. *Id.* The Seventh Circuit in *Pope* summed up the law by saying "we will defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." *Id.* In the present case, that is exactly what has occurred.

## C. HISTORY OF THE ADOPTION OF COMMENT 18(g)–4

■ Comment 18(g)–4 has an interesting history which discloses a clear inconsistency in the Board's interpretation. Regarding the legality of using a contingent event for the payment due date, the Federal Reserve has published two patently inconsistent interpretations of 12 C.F.R. § 226.18(g). Comment 18(g)–4 as originally proposed in 1997 read as follows:

4. *Timing of payments.* Creditors must disclose when payments are due including the calendar date that the beginning payment is due. For example, a creditor may disclose payments are due "monthly beginning on July 1, 1998." A reference to the occurrence of a particular event, for example, disclosing that the first payment is due "30 days after the completion of construction," is not sufficient. If the beginning-payment date is unknown, the creditor must use an estimated date and label the disclosure as an estimate pursuant to § 226.17(c).

Proposed Official Staff Interpretations of Regulation Z, 62 Fed.Reg. 64769, 64775 (1997). The Board went on to explain the proposed comment.

*18(g) Payment Schedule*
Proposed comment 18(g)–4 clarifies the requirement for disclosing the timing of payments. It explains that creditors must include the calendar date when the beginning payment date is due and clarifies that reference to the occurrence of a particular event, for example, disclosing that the first payment is due "30 days after the completion of construction," is

**2.** While the law coming out of the Supreme Court on retroactivity has been conflicting, the Seventh Circuit has adopted the *Bowen* line of cases. *See Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 935 (7th Cir.1992). *But see Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (holding that absent legislative intent to the contrary, courts should apply law which is in effect at the time they are rendering their decisions, unless doing so would lead to manifest injustice).

not sufficient. If a precise date is unknown, the creditor must estimate a date and label the disclosure as an estimate.

62 Fed.Reg. at 64771. Thus, the Board viewed the proposed comment as a clarification. Proposed comment 18(g)–4 also reflected the existing case law at that time. *See Graves v. Tru–Link Fence Co.*, 905 F.Supp. 515, 521 (N.D.Ill.1995) (disclosure of payment due date as "30 days from comp[letion]" not sufficient); *Rowland v. Magna Millikin Bank*, 812 F.Supp. 875, 877 (C.D.Ill.1992) (disclosure of payment due date as "45 days after installation" not sufficient); *Shepeard v. Quality Siding*, 730 F.Supp. 1295, 1297 (D.Del.1990) (disclosure of payment due date as "60 days after completion" not sufficient).

What followed the publication of the 1997 proposed comment, however, was a period of intense pressure from lobbyists responding to the proposed comment. 98 of 110 comments provided to the Board were from various types of creditors. 63 Fed. Reg. at 16670. It would appear that the commenters were successful in their efforts to persuade the Board to change its position on the legality under TILA of using a contingent event as the payment due date because on April 6, 1998 the Board reversed its interpretation. "[T]he disclosure may refer to the occurrence of a particular event, for example, by disclosing that the beginning payment is due '30 days after the first loan disbursement." ' Official Staff Interpretations of Regulation Z, 63 Fed.Reg. 16669, 16677 (1998)

■ However, the Board also termed the adopted comment a clarification.

Some commenters viewed the inclusion of a beginning-payment date as a new requirement that is more appropriate for a regulatory revision than an interpretation in the commentary. The Board believes that the new comment merely interprets and clarifies the existing requirement in § 226.18(g). The staff is aware that creditors could reasonably have interpreted the statutory requirement for specifying the "period of payments" in different ways. Because of confusion in this area, comment 18(g)–4 has been added to explain creditors' disclosure responsibilities.

Official Staff Interpretations of Regulation Z, 63 Fed.Reg. 16669, 16673 (1998).[3] Consequently, the Board has called both the proposed comment. and the adopted comment clarifications. However, since both are completely contrary interpretations of the same rule, it is not possible that both are clarifications.[4]

■ Courts will not defer to an agency's expressed intent that a regulation is clarifying when a prior interpretation of the regulation is patently inconsistent with a later one. *Pope*, 998 F.2d at 483. Incon-

---

**3.** As Plaintiffs point out, it is not clear whether the Board viewed just the general rule in the comment as a clarification or whether it also viewed the exception as a clarification. The statement that the comment was a clarification immediately followed the acknowledgment of the commenters' belief that the inclusion of a beginning-payment date was a new requirement. Since § 226.18(g) always required the inclusion of a beginning payment date, comment 18(g)–4 was a clarification as to that requirement and not a change in the law. However, the Board's statement makes it appear as though all of comment 18(g)–4, including the new exception, is a clarification. Because of the ambiguity, the Court will proceed under the assumption that the Board intended the exception also to be a clarification.

**4.** That the 1997 interpretation was proposed as opposed to adopted is irrelevant to the question of whether the Board has issued inconsistent interpretations. Courts have found statements issued in all sorts of manners and by a variety of individuals to be official interpretations. For a statement to be considered an official interpretation, it need only be a public pronouncement by an agency official. *See Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1056 (Temp.Emer.Ct.App.1978) (stating that statements by lower level official are entitled to weight in determining the agency's consistency with earlier and later pronouncements); *California Molasses Co. v. California & Hawaiian Sugar Co.*, 551 F.2d 1230, 1235, 1239 (Temp.Emer.Ct.App.1977) (stating that interpretations of IRS agents are entitled to deference).

sistency by definition is "flip-flops by the agency over time." *Homemakers North Shore, Inc., v. Bowen*, 832 F.2d 408, 413 (7th Cir.1987). The present case is precisely the situation in which the Seventh Circuit has stated that courts should not defer to an agency's designation of an interpretation as a clarification. Consequently, this Court concludes that comment 18(g)–4 is a change in the law as opposed to a clarification. As such, this Court declines to apply it retroactively. As a result, the Court denies the motion to reconsider the Court's prior opinion for the reason that that opinion was appropriately based upon the law applicable during the period at issue.[5]

## IV. CONCLUSION

Because the court holds that comment 18(g)–4 should not be applied retroactively, **the Court denies Defendants' motion for reconsideration.**

**5.** Because comment 18(g)–4 does not apply retroactively, the Court finds it unnecessary to address the other arguments advanced by Plaintiffs as to why comment 18(g)–4 may not apply to the facts of this case.