389 So.2d 445 (1980)
Timothy GAINES, Jr., Plaintiff-Appellee,
v.
James PHILLS, Jr., d/b/a Phills Construction Company, Defendant-Appellant.
No. 14280.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1980.
Rehearing Denied October 30, 1980.
*446 Gamm, Greenberg & Kaplan by Irving M. Greenberg, Shreveport, for defendant-appellant.
Eatman & Hunter by Robert E. Eatman, Jr., Shreveport, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied October 30, 1980.
FRED W. JONES, Jr., Judge.
From a judgment in favor of plaintiff ordering rescission of a building contract *447 and awarding damages, penalties and attorney fees, defendant appeals. Plaintiff answered the appeal, seeking an increase in the attorney fee award.
We amend the judgment of the trial court and affirm.
The issues presented on this appeal are whether the trial judge erred in: (1) finding that the building contract included a credit transaction subject to 15 U.S.C. 1601 et seq.-the Truth in Lending Act; (2) finding that plaintiff was due damages because of defendant's failure to furnish written notice of lien rights under La.R.S. 9:4852; and (3) finding that plaintiff was entitled to damages for mental distress.
Factual Context
Timothy Gaines, Jr., a Shreveport homeowner, and James Phills, Jr., a Shreveport building contractor doing business as Phills Construction Company, executed two rather poorly drawn written instruments (prepared by Phills) in connection with Phills undertaking certain construction work for Gaines. The first instrument, a building contract dated January 30, 1978, provided that Phills would perform specified work, generally involving remodeling and adding to Gaines' existing dwelling, for a total price of $15,000.00 payable in three stipulated installments.
Another written instrument, dated February 1, 1978, signed by Gaines, prepared on one of Phills' "construction proposal" forms, contained the following language:
"This note is for the remaining of the contract price on the house.
"It has been agreed between Timothy Gaines and James Phill, owner of Phill's Construction Company, that James Phills will carry the note for $4,000.00 at a rate of 5% interest. The 5% interest will be enforced for one year; if paid before one year (2/1/79) then there will not be an interest fee; afterward the interest is expected to be paid, at a rate of $50.00 a month until bill is paid.
"Interest on this note is $750.00, payment begins one month after the job is completed.
"This note will not be sold to any other company; it will be maintained by Phill's Construction Co.
"NOTE: This note can be paid in full anytime."
Evidence presented at the trial established that the total contract price was actually $19,000.00. It was contemplated by the parties that upon completion of the job Gaines would have paid Phills the sum of $15,000.00 in cash, with the balance of $4,000.00 financed by Phills in accordance with the terms of the second instrument.
The record indicates that this construction project was plagued with difficulties from the beginning, with relations between the parties becoming increasingly acrimonious as the work progressed. Rain caused water damage at the start of the undertaking. During the course of the construction the city building inspector required certain structural changes in the building. There also appeared to be an accumulation of minor irritations which combined to aggravate an increasingly unpleasant working relationship between Gaines and his wife on one side and Phills and his employees on the other. Most of Gaines' complaints, deemed by the trial judge to be well-founded, centered around unsatisfactory workmanship by Phills' crew. Finally, following disputes over the paving of a concrete patio and the proper method of performing certain corrective work, the job was terminated prior to completion. Whether Phills departed voluntarily or was ordered off the Gaines premises was a point of contention in the trial court. Be that as it may, because of Phills' failure to pay various subcontractors, liens were filed against the Gaines property. Only one of those, in favor of Shreveport Millwork & Supply Company, Inc., was reduced to judgment.
As a consequence of the described unfortunate sequence of events, this suit was filed by Gaines against Phills for rescission of the building contract because of violation of the Truth in Lending Act and for damages, penalties and attorney fees.
*448 Application of Truth in Lending Act
It was stipulated by the parties that defendant's business was such that he was required to comply with 15 U.S.C. 1601 et seq. (referred to hereinafter simply as the "Act") and, further that defendant made no disclosures that might have been required by the Act if it was applicable.
Defendant argues that a credit transaction between the parties was never consummated since the instrument couched in the language of a promissory note contained no specific payment provisions. Therefore, it was his position that the Act was inapplicable.
Section 1602 of the Act contains the following pertinent definitions:
"(e) The term `credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.
. . . . .
"(h) The adjective `consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household (emphasis added), or agricultural purposes."
The trial judge found that the agreement between the parties included a credit transaction which required compliance with the Act because the arrangement allowing plaintiff to pay the $4,000 balance of the construction contract in monthly installments "placed a substantial portion of the construction contract within the spirit and tenor of Truth in Lending Statute." According to the testimony presented at the trial, it was the intent of the parties that the two described written instruments be treated as one home improvement contract with a portion of the total contract price to be financed by the defendant. Since the defendant was clearly granting to plaintiff the right to defer payment of the $4,000 debt, we agree with the trial judge that this was a consumer credit transaction within the meaning of the Act.[1]
Finding that the Act is applicable, we turn to the rights afforded to the debtor under the terms thereof. Section 1635(a) provides:
"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section."
La.R.S. 9:4801 grants to every contractor who performs work and furnishes material for the improvement of immovable property a privilege upon the affected property for his labor and materials which may be evidenced by the filing of a lien. It was defendant's obligation to disclose to plaintiff the possibility of the creation of that lien. Gerasta v. Hibernia National Bank, 575 F.2d 580 (5th CCA 1978).
*449 Section 1635 of the Act vests a continuing power of rescission in the credit purchaser until three days following delivery of statutorily prescribed disclosures whenever as an incident of the credit transaction a security interest is acquired in the debtor's realty which he uses as his residence. Sosa v. Fite, 498 F.2d 114 (5th CCA 1974).
Since the defendant did not make to plaintiff the disclosure required by law, plaintiff timely exercised his right to have the transaction rescinded. In connection therewith, Section 1635(b) of the Act provides:
"(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."
The parties stipulated that plaintiff had paid to defendant the sum of $10,000 under the terms of their contract. The provisions of Section 1635(b) mandate the return of those funds. On the other hand plaintiff is required to return to defendant the property received by him, unless that is impractical. Since the labor and material furnished by defendant have become a part of plaintiff's dwelling, we agree with the trial judge that the return of this property would not be practical and that defendant is entitled to credit for the enhancement to the market value of plaintiff's property due to defendant's work. Further, the trial judge was not clearly wrong in accepting the testimony of Charles Hall that this figure amounted to $4,050.00. Deducting this from the $10,000 paid, plaintiff is entitled, as held by the trial judge, to the return of $5,950.00 under Section 1635(b).
Section 1640 of the Act provides in pertinent part:
"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of
"(1) any actual damage sustained by such person as a result of the failure;
"(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or
. . . . .
"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."
The "note" in this case provided for a finance charge of $750.00. Since twice this amount would exceed the maximum allowable penalty under Section 1640, the trial judge was correct in awarding the sum of $1,000 as a penalty.
*450 Since this section also authorized the granting of a reasonable attorney fee, the trial judge acted within his discretion in fixing the sum of $1,250 for this item. Plaintiff is also entitled to a reasonable attorney's fee for services rendered on this appeal since his suit was a "successful action." Therefore, we amend the judgment of the lower court to increase the attorney fee by $500.00 to $1,750.00. See Gerasta v. Hibernia National Bank, supra.
Damages for Failure to Give Lien Notice
La.R.S. 9:4852 requires that "prior to or at the time of entering into a contract for residential home improvements" the contractor must deliver to the homeowner a written notice of the possibility of lien filings. If the contractor fails to give this notice, under La.R.S. 9:4855 the "owner shall have a civil cause of action therefor, and shall be entitled to reasonable damages and attorney fees."
There is no question but that defendant failed to furnish plaintiff with the described notice. Further, liens were actually filed and one was reduced to judgment. However, defendant-appellant argues that plaintiff is not entitled to damages because the former had offered to give the latter credit for the amount of the lien on the balance due defendant by plaintiff. Obviously, the cited statutory provision does not support a defense of this nature and the trial judge was correct in rejecting it. The allowance of $500 as damages under this provision was within his discretion.
The trial judge was also correct in holding that plaintiff was entitled to reimbursement for the amount of the judgment rendered against him in favor of the lienholder, Shreveport Millwork & Supply Company, Inc.
Damages for Mental Distress
Because of "all the difficulties created by Mr. Phills and the construction project which he undertook," the trial judge awarded plaintiff the sum of $1,000 for mental anguish.
The plaintiffs in Ostrowe v. Darensbourg, 377 So.2d 1201 (La.1979) sued for breach of a contract to construct a dwelling and, among other things, asked for damages for mental anguish and distress under La.C.C. Art. 1934(3)[2]. Affirming a lower court judgment which rejected this particular demand, the Louisiana Supreme Court held:
"... In the instant case we hold that the obvious inference to be drawn from the limited facts available in this record is that the principal object of the contract, as with most contracts to construct dwellings, was to build a structure to be used as a residence by the plaintiffs. This was their overriding concern: to obtain a place to live in, to provide shelter from the elements and to afford health and comfort for their family in keeping with their means.
"While plaintiffs claim that intellectual gratification or convenience was the object of the contract, that claim is not supported by the record except by their argument in brief and tenuous inferences. And, if intellectual gratification or convenience were objects of the contract, they were not principal objects but incidental objects not specifically contracted for, as was the construction of the physical structure itself."
The ruling in Ostrowe, to which we must adhere, is dispositive of the claim for damages for mental distress in this action. Examination of the record reveals no evidence that the principal object of the contract between the parties was anything other *451 than the remodeling and enlarging of plaintiff's dwelling. Certainly there was no explicit evidence that a principal object of the contract was plaintiff's intellectual gratification or convenience. Consequently, we conclude that the trial judge erred in awarding damages for mental distress, and delete this item from the judgment.
Conclusion
For the reasons set forth, we amend the judgment of the trial court by deleting the award of $1,000 for damages for mental distress and by increasing the amount of the attorney fee awarded to plaintiff-appellee from $1,250 to $1,750 and, as amended, affirm. Costs of this appeal are assessed one-half against the appellant and one-half against the appellee.
NOTES
[1] See O'Neil v. Four States Builders & Remodelers, Inc., 484 F.Supp. 18 (E.D.Pa.1979), in which Truth in Lending Act was held to apply to home improvement contract which contained credit provisions.
[2] "3. Although the general rule is that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."