Joann PEARSON and William A. Gunter, IV, as Administrator ad litem of the Estate of Jacob James, Plaintiffs,

v.

COLONIAL FINANCIAL SERVICE, INC., an Alabama corporation; Federal Building Service, Inc., an Alabama corporation; Thomas R. Duncan; E. C. Stephens; Willie Frank Porter; and Georgia Porter, Defendants.

Civ. A. No. 80–117–N.

United States District Court,
M. D. Alabama, N. D.

Oct. 21, 1981.

Legal Services Corp. of Ala., David S. Yen and Thomas M. DeRose, Montgomery, Ala., for plaintiff Pearson.

William A. Gunter, IV, Montgomery, Ala., pro se.

Sirote, Permutt, Friend, Friedman, Held & Apolinsky, James A. Harris, Jr., Birmingham, Ala., and Azar, Campbell & Azar, Edward J. Azar, Montgomery, Ala., for defendant Colonial Financial Service, Inc.

Turner, Wilson & Christian, Terry P. Wilson, Montgomery, Ala., for defendants Duncan and Federal Building Service, Inc.

George W. Thomas, Montgomery, Ala., for defendants Porter.

## MEMORANDUM OPINION

HOBBS, District Judge.

In this Truth-in-Lending Act case the Court is confronted with an unusual fact situation which compounds the perplexing problems normally associated with such cases. It is an understatement to suggest that this particular fact situation was never anticipated by Congress when it drafted the Truth-in-Lending Act. Nevertheless, the Court must divine Congressional intent for the case at hand. The Court has jurisdiction pursuant to 15 U.S.C. § 1640(e) and holds that plaintiff Pearson's attempt to rescind the transaction was valid and thus defendant Colonial Financial Service, Inc.'s (Colonial) failure to recognize said rescission and take the appropriate steps upon rescission was a violation of the Truth-in-Lend-

ing Act. For the reasons set out in the opinion, the Court will award the following relief: (a) Colonial shall pay to plaintiff Pearson and the Estate of James the sum of $2,005.42, being the return of payments made under the mortgage;[1] (2) Colonial shall pay $1,000.00 as statutory penalty under § 1640 to Pearson; (c) the foreclosure proceedings will be declared invalid and title to the property which was subject to foreclosure will be vested in the Estate of James, but said Estate shall pay to Colonial the sum of $3,000.00; (d) Colonial shall pay to defendants Porter the sum of $6,000.00; and the Estate of James shall pay to defendants Porter the sum of $60.80.

## FACTS

In the spring of 1978, plaintiff Joann Pearson and Jacob James were living in a house located at 2814 Sixth Street in Montgomery, Alabama, which house was owned solely by James. James also owned an adjoining lot on Fifth Street. Although Pearson referred to James as her uncle, it was determined at the trial that she was in no way related to him.

On April 27, 1978, Pearson and James entered into a "Home Improvement Sales Contract" with defendant Thomas R. Duncan d/b/a Federal Building Service. James signed the contract as "buyer" and Pearson signed as "co-buyer." The contract called for the installation of steel siding and certain other repairs to the Sixth Street house.

The contract provided that the Sixth Street house was "the premises" to be improved and that "as security for the payment and performance of Buyer's obligations under this contract, Buyer shall execute and deliver to the contractor a real estate mortgage on the property improved." James executed a mortgage in favor of Duncan, but the mortgage covered both the Fifth and Sixth Street properties. The mortgage was also signed by plaintiff Pearson. The contract, however, in no way indi-

cated that the mortgage would include the Fifth Street property. Both contract and mortgage were assigned by Duncan to Colonial on May 17, 1978.

The Financial Disclosures provision of the contract indicates a payoff to Modern Credit Corporation. The Modern Credit account was in the names of James and his deceased wife but not Pearson. The amount of the payoff, $544.11, reflected a late charge for April and a rebate of unearned interest and insurance in May. Such amount could not have been and was not calculated as of April 27, 1978, the date of the execution of the contract.

James died on December 27, 1978, leaving no will and his estate has not been administered. Both prior and subsequent to James' death, Pearson made all payments on the contract until the early part of 1980. When Pearson ceased making mortgage payments, she was notified by letter dated February 27, 1980, that foreclosure proceedings were being commenced and that the date of foreclosure would be March 25, 1980.

By letter dated March 6, 1980, Pearson and her counsel notified defendant Colonial that she was cancelling the transaction. Such notice of rescission was made solely by Pearson and not on behalf of the Estate of James. Defendant Colonial took the position that since she was not the owner of the property, she had no right to rescind or cancel the transaction, and thus defendant refused to take the steps required of creditors under the Truth-in-Lending Act when a valid rescission is exercised.

Pearson filed this action on March 24, 1980 with a motion for a temporary restraining order seeking to prevent the foreclosure and sale of the property. This Court, through Judge Hancock, denied the motion and on March 25, 1980, the property was sold to defendant Willie Frank Porter.

A trial on the merits subsequently followed. After its completion, the Court concluded that a proper decision could not be

---

1. Although the evidence is that Pearson made all payments under the mortgage, she was living in the house owned by James and was not paying any rent. The statute states that the

money paid in shall be refunded to the obligors. Thus, the Court orders that this sum be divided equally between Pearson and Estate of James.

rendered without the Estate of James being made a party and represented in the proceedings. Accordingly, by order entered August 6, 1981, the Court appointed an administrator ad litem for the Estate of James.

### CONCLUSIONS OF LAW

#### Rescission

■ 15 U.S.C. § 1635(a) which grants to an obligor the right to rescind provides as follows:

> Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

Defendants challenged Pearson's right to be considered an obligor since she had no legal interest in the premises on Fifth or Sixth Streets. In response to this challenge, this Court held by a prior order that she is an obligor within the meaning of this section.

In accordance with § 1635(a), an obligor has a right to rescind until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures whichever is later. If the disclosures are never made, the debtor has a continuing right to rescind for up to three years from the date of consummation. *Rudisell v. The Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980).

In this case, Pearson attempted to rescind the transaction more than three days after the consummation of the transaction. Therefore, she must show that defendant Duncan failed to make "all other material disclosures so that the three day period did not run." *Bustamente v. First Federal Savings & Loan Ass'n*, 619 F.2d 360 (5th Cir. 1980).

Pearson alleges, among other things, that defendant Duncan violated 12 C.F.R. § 226.-8(b)(5) by failing to adequately disclose in the contract that a mortgage was being taken on the Fifth Street property. As stated above, the contract did not in any way notify Pearson or James that a mortgage was being taken on the Fifth Street property.

Defendants contend, however, that Regulation Z does not require a complete property description. 12 C.F.R. § 226.8(b)(5) provides in pertinent part as follows:

> In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable.

Thus, this section allows a creditor to refer the buyer to a mortgage evidencing the security interest when the creditor cannot properly make a clear identification on the contract. The apparent purpose of this section is to eliminate the burden of a requirement that the property be described in as much detail on the face of the contract as it would be on a deed or mortgage. *See,*

*Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363, 1368 (5th Cir. 1977).

In the present case, however, the contract does not refer the buyer to a mortgage to determine what property is being used as security. Rather, the only statement in the contract concerning a mortgage is the requirement that the buyer execute and deliver a mortgage on the property improved, that is, the Sixth Street property. The Court is of the opinion that while Duncan did not have to describe the property in detail, he was at least required to disclose that the Fifth Street property was also being mortgaged.

■ Defendants, however, argue that even if the security interest was not properly disclosed, such defect, while being a material nondisclosure as to James, was not a material nondisclosure to Pearson, a co-maker of the contract who had no legal interest in either property. Although Pearson had no ownership interest in either property and was not related to James, she did live in the same house with James and maintained a close relationship with him for many years. Because of this relationship, the Court is unable to conclude that the fact that James was mortgaging the Fifth Street property as well as the Sixth Street property would have been irrelevant to the decision of "a reasonable consumer," in Pearson's position, "to utilize the credit extended." See *Bustamente, supra,* at p. 363. Therefore, the Court is of the opinion that the failure to disclose adequately the security interest was a material nondisclosure. Consequently, Pearson was entitled to rescind the transaction on March 6, 1980. Having decided that Pearson was entitled to rescind the transaction because Duncan failed to describe adequately the security interest, the Court need not decide whether other alleged violations constitute material nondisclosures.

### Effect of Rescission

■ Under the provisions of 15 U.S.C. § 1635(b), when an obligor exercises his right to rescind he is no longer liable for any finance or other charge. Within ten days after receipt of a notice of rescission, the creditor is required to return "all monies" that the obligor has paid. *Sosa v. Fite,* 498 F.2d 114 (5th Cir. 1974). In this case, Pearson paid $2,005.42 pursuant to the contract, and defendant Colonial concedes that it did not return this money to her or to the Estate of James.

Section 1635(b) requires certain other steps to be taken by both the debtor and creditor when the debtor exercises the rescission right. When the debtor exercises such right, "any security interest given by the obligor ... becomes void upon such rescission," and the creditor within ten days of receipt of the rescission notice must "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). Finally, when the creditor completes its obligations, the debtor must tender the property to the creditor or if return of the property is impracticable, must tender its reasonable value.

Were this a normal situation, the Court would now order defendants to return to the obligor the $2,005.42 which was paid pursuant to the contract, and order defendants to terminate the mortgage. Being of the opinion that return of the improvements is impracticable, the Court would then order plaintiff to tender its reasonable value to defendants. Although there was conflicting testimony as to the reasonable value of the improvements, the Court concludes it to be $3,000.00, including the indebtedness paid to Modern Credit Corporation, rather than the $5,400.00 which was the contract price for such improvements. Further, the Court would allow the creditor to offset the $3,000.00 owed with the $2,005.42 it is required to pay, thus only requiring the creditor to pay $994.58 to the obligor. See *Harris v. Tower Loan of Miss., Inc.,* 609 F.2d 120 (5th Cir. 1980).

The Court under this unusual fact situation cannot order this relief. When an obligor rescinds, he is no longer obligated on the contract but is obligated because he has received goods of value. Thus, when the Court orders the creditor to terminate the

mortgage and return the money paid under the contract, the Court, correspondingly, requires the obligor-debtor to pay the creditor the reasonable value of the goods received. Because of the peculiarities of this case, the Court is faced with the perplexing problem of deciding who is to receive the refund of the proceeds paid pursuant to the contract and who is obligated for the reasonable value of the goods received.

Pearson and the Estate of James each claim that they are entitled to the $2,005.42 —Pearson because she paid this money, and the Estate of James because the money was paid on behalf of the Estate. Section 1635 requires that "the creditor shall return to the obligor any money . . . given." Neither the Act nor the Regulations promulgated thereto provide who among the joint-obligors are entitled to the refund. Since the Act requires the money returned to the "obligor" and since Pearson and James were both obligors, the Court concludes that each is entitled to one-half of the refund.

As stated above, the obligor is liable for the value of the improvements and this amount can be offset by the creditor. Here, however, since Pearson has no legal interest in the property or improvements, the Court cannot require her to pay for such improvement which improvements solely benefit the estate. Therefore, the Court concludes that the Estate must pay to Colonial $3,000.00. Colonial may, however offset the $1,002.71 which it must return to the Estate.

In other words, the Court is of the opinion that the plausible and fair solution to this perplexing problem is (1) to order the contract rescinded; (2) require defendant Colonial to pay $1,002.71 to Pearson and $1,002.71 to the Estate of James, this money representing the $2,005.42 which was paid pursuant to the contract; (3) invalidate the foreclosure sale; (4) order the Estate of James to pay Colonial $3,000.00 as the value of the improvements. In this way, defendants receive the value of the goods provided; Pearson is not obligated for goods which she in fact will not receive; and the Estate of James will regain title to the

property and will pay for the benefits received. Although the Estate is obligated to Colonial for $3,000.00, this amount represents a corresponding benefit to the Estate. The purchase of this property by defendants Porter at the foreclosure sale was with notice of the claim that the mortgagee had no right to sell the property because the mortgage was defective. By cancelling the foreclosure sale, the Court will require Colonial to return to the Porters the $6,000.00 purchase price and the Estate to pay the Porters $60.80 for 1980 ad valorem taxes paid by the Porters.

*Civil Liability*

■ The civil liability section 15 U.S.C. § 1640, applies whenever a creditor fails to comply with "any requirement" imposed by the Act, including Section 1635. *Gerasta v. Hibernia National Bank*, 575 F.2d 580 (4th Cir. 1978). As stated above, Colonial did not return the money paid by plaintiff within ten days of Colonial's receipt of Pearson's notice of rescission. Accordingly, Colonial is liable to Pearson. The Court is of the opinion, however that Pearson has not shown any actual damages. Thus, she is only entitled to an award of $1,000.00 since an award of twice the finance charge would exceed $1,000.00.

■ Relying on *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980), the Estate of James also claims that it is entitled to an award of the $1,000.00 statutory penalty for failure to comply with the rescission requirements of Section 1635 upon receipt of Pearson's rescission notice. The Court is provided with little guidance in resolving this issue. In *James v. Home Construction Co., supra*, the Court of Appeals held that an action under § 1635 survives the death of the obligor. Were this Court being asked to decide whether the administrator ad litem could have rescinded the contract, the Court would find the *James* case conclusive. This issue, however, is not before the Court because no one has attempted to rescind the contract on behalf of the Estate. The only attempted rescission was by Pearson and this Court cannot

conclude that when Pearson, a person in no way related to Jacob James and one who had not been appointed administrator of his estate, attempted to rescind the contract, that such attempted rescission served as notice of rescission by the Estate, despite the fact that they were comakers of the note.

Moreover, the Court notes that in *James* the Court of Appeals expressly stated that the case did not decide whether a cause of action under § 1640, as opposed to § 1635, survives. *James, supra,* at 730, n. 4. Assuming, arguendo, that it does, *see Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir. 1980). The Court emphasizes that the only alleged violation committed by defendants in this case, which falls within the one year statute of limitations set out in § 1640, is defendants' failure to acknowledge Pearson's attempted rescission. Thus, the violation which the Estate of James seeks to assert as entitling James to the statutory penalty was a violation committed to Pearson and not to James. Thus, the Court concludes that James never had a cause of action which could survive his death.

In other words, if an obligor entered into a transaction governed by TIL and the creditor violated the Act, for example, by failing to make a necessary disclosure, and such obligor died, the Court could appreciate an argument that the obligor's rights under § 1640 survived his death. Similarly, if the obligor properly exercised his right to rescind and such rescission was not recognized by the creditor, and the obligor subsequently died, the Court again would see some merit to the argument that the obligor's rights under § 1640 survived.

In this case, however, an action against defendants for failing to provide adequate disclosures is barred by the one year statute of limitations. Further, neither James nor his estate attempted to rescind the contract. Thus, the present facts do not fit into the above examples. The Court cannot hold, as the Estate of James suggests, that when defendants refused to recognize Pearson's attempted rescission, such failure constitut-ed a violation of the Estate's rights under TIL when the Estate did not request a rescission. Accordingly, the Court concludes that defendant Colonial is not liable to the Estate of James under § 1640.

CONCLUSION

In summary, the Court is of the opinion that Pearson properly exercised her right to rescind the contract in question and that Colonial's failure to acknowledge such rescission is a violation of TIL. The Court concludes that the proper relief is to order Colonial to return the $2,005.42 paid pursuant to the contract, to Pearson and the Estate of James, such funds to be divided between Pearson and the Estate equally. In doing so, the $1,002.71 which goes to the Estate will be offset against the $3,000.00 which the Estate owes Colonial as the value of the improvements, thus requiring the Estate to pay Colonial $1,997.29. Pearson is entitled to $1,000.00 as statutory damages under § 1640. The foreclosure sale will be rendered null and void and title to the property will be vested in the Estate of James. Defendants Porter are entitled to receive $6,000.00 from Colonial and $60.80 from the Estate. Attorney fees will be considered by the Court upon the filing of appropriate motions.

A judgment will be entered in accordance with this opinion.