Ree CLAY and Ruby Chivers, Plaintiffs,

v.

Iver R. JOHNSON and Marvin Bilfeld, doing business as Davenport Construction Company, Defendants.

No. 97 C 6007.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 3, 1999.

Daniel A. Edelman, Charles H. Lee, Edelman, Combs & Latturner, Chicago, IL, for plaintiffs.

Thomas G.A. Herz, Jr., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

The Court conducted a two-day bench trial on October 12 and 13, 1999, to decide the issue of damages following this Court's earlier ruling that Defendants violated the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (1998) by failing to properly disclose the payment schedule and that Plaintiffs had adequately rescinded their contracts. *Clay v. Johnson,* 22 F.Supp.2d 832 (N.D.Ill.1998), motion for reconsideration denied, 50 F.Supp.2d 816 (N.D.Ill. 1999).

The Court has carefully considered the testimony of the three witnesses who testified at trial, the exhibits introduced into evidence, the written submissions by the parties, and the closing arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they should also be considered findings. *See Miller v. Fenton,* 474 U.S. 104, 113–114, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985).

## I. FINDINGS OF FACT

### A. THE PARTIES.

1. Plaintiffs Ree Clay ("Clay") and Ruby Chivers ("Chivers") (collectively "Plaintiffs") are sisters. In 1995, they resided in a house owned by Clay at 4633 West 177th Street, Country Club Hills, Illinois.

2. Defendant Marvin Bilfeld ("Bilfeld") is an individual who resides in Highland Park, Illinois. He is a general contractor who does business as Davenport Construction Company ("Davenport") located in Blue Island, Illinois. Davenport has no employees other than Bilfeld. Davenport subcontracts all of its construction and remodeling contracts to independent contractors who perform the construction work.

3. Defendant Iver Johnson ("Johnson") is an individual who resides in Chicago, Illinois. Johnson finances construction projects for Davenport's customers.

4. Bilfeld, Davenport and Johnson are hereinafter collectively referred to as "Defendants".

### B. THE THREE CONSTRUCTION CONTRACTS.

5. On February 11, 1995, Plaintiffs executed a retail installment contract and mortgage to finance the purchase of $9,500 in home improvements from Davenport. (Px 1–3). The contract was later assigned to Bilfeld. The contract included work on Plaintiffs' roof and a new kitchen floor. (Px 3). On March 11, 1995, Clay executed a completion certificate for the work performed. (Px 1).

6. On July 10, 1995, Plaintiffs executed a second retail installment contract and mortgage to finance the purchase of $6,500 in home improvements from Davenport. (Px 4–6). The contract was later assigned to Bilfeld. The contract included work on Plaintiffs' basement. (Px 6). On August 1, 1995, Plaintiffs executed a completion certificate for the work performed. (Px 2).

7. On July 15, 1995, Clay executed a third retail installment contract and mortgage to finance the purchase of $24,000 in home improvements from Davenport. (Px 7–9). The contract was later assigned to Bilfeld. The contract included a kitchen remodeling. On August 10, 1995, Plaintiffs executed a completion certificate for the work performed. (Px 3).

8. Between March and August, 1995, Plaintiffs began to observe problems with the work performed. Plaintiffs voiced their complaints to Bilfeld who contacted the subcontractor to correct the problems. The subcontractor corrected many of the problems.

9. On August 21, 1997, over two years after the work was completed and problems substantially corrected, Plaintiffs mailed notice to the Defendants requesting rescission of all three contracts.

### C. PLAINTIFFS FILE THIS ACTION.

10. On August 25, 1997, Plaintiffs filed this action against Defendants. Plaintiffs filed an amended complaint on January 29, 1998.

### D. CLAY FILES CH. 13 BANKRUPTCY.

11. On August 26, 1997, Clay filed for Chapter 13 bankruptcy in the United States District Court for the Northern

District of Illinois, Eastern Division, Case Number 97 B 26080.

12. When Clay filed for bankruptcy, Defendants were listed as secured creditors as a result of the mortgages that were executed with the February 11, 1995, July 10, 1995 and July 15, 1995 contracts.

13. To date, Defendants are still listed as secured creditors under Clay's bankruptcy plan. Defendants have not released their mortgages or caused their claims to be listed as unsecured.

14. Under Clay's Chapter 13 bankruptcy plan, all secured creditors will be paid 100% of the amount Clay owes.

15. From the time Clay filed for bankruptcy to the current date, Defendants have been paid on a monthly basis.

16. This Court previously held that certain federally required disclosures in Plaintiffs' three retail installment contracts failed to comply with TILA and implementing Regulation Z, 12 C.F.R. part 226. The Court recognized that the Plaintiffs had the right to, and effectively did, rescind their February 15, 1995, July 10, 1995 and July 15, 1995 transactions with Defendants.

### E. THE REASONABLE VALUE OF THE HOME IMPROVEMENTS.

17. The total contract price for the three contracts is $40,000.

18. The work completed included installation of a new fiberglass shingle roof; a new kitchen and basement tile floor; partial remodeling of two bathrooms; installation of a bathroom vanity and toilet; repair and installation of new bathroom walls and floor; shower repair; remodeling of kitchen including: new cabinets, countertops, garbage disposal, and ceramic tile backsplash; two ceiling fans; one awning; new garage door with electric opener; painting of the house interior; and installation of new carpeting throughout the house.

19. The Court finds the testimony of Bilfeld credible regarding the reasonable value of the work under the three contracts to be $40,000. Bilfeld is an experienced general contractor who has contracted approximately 6,000 jobs over the past 20 years. The Court finds the testimony of Plaintiffs' expert, John Tomassi, unpersuasive given the extensive home renovation work performed under the three contracts. Tomassi claimed the reasonable value of the work to be $12,340 (Px 10), less than 31% of the contracted value. The Court finds that work in the amount of $38,000 was actually performed and $2,000 in repairs were required. (Px 19–50). These figures represent the Court's findings that the work was 95% completed and minor repairs were necessary to bring the work up to workmanlike standard. Due to scheduling problems between the parties, Davenport's subcontractor was not able to return to complete all punch list items and repairs.

20. The reasonable value of the home improvement work provided by Davenport to Plaintiffs was $38,000.

### II. CONCLUSIONS OF LAW

Plaintiffs claim $6,000 in statutory damages, which includes $2,000 for each transaction violation. Defendants argue that Plaintiffs are time barred by 15 U.S.C. § 1640(e), which sets forth a one year statute of limitations to bring claims for statutory damages and attorney's fees under 15 U.S.C. § 1640(a). Defendants also contend that the maximum statutory damage for each violation should be limited to $1,000.

Similarly, Plaintiffs claim attorney's fees and costs in an estimated amount through trial of $54,308.31. Defendants argue that these too are time barred by the one year statute of limitations as set forth in 15 U.S.C. § 1640(e). In addition, Defendants argue that Plaintiff's fee request is excessive.

### A. PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES.

Regarding statutory damages and attorney's fees, the TILA provides,

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

. . . .

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000

. . . .

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the cost of the action, together with a reasonable attorney's fee as determined by the court

. . . .

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

15 U.S.C. § 1640(a), (e) (1998) (as amended in 1995).

Furthermore, the TILA gives a plaintiff three years from the time a transaction is executed to exercise her right to rescind under 15 U.S.C. § 1635. "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635.

In the case at hand, Plaintiffs are entitled to $6,000 in statutory damages under 15 U.S.C. § 1640(a)(2)(A)(iii) for Defen-

dant's refusal to recognize Plaintiff's rescission rights pursuant to 1635(b). "TILA clearly states that any creditor who violates § 1635(b) is liable for statutory damages and attorney's fees." *Aquino v. Public Finance Consumer Discount*, 606 F.Supp. 504, 509–510 (E.D.Penn.1985). *See also Strange v. Monogram Credit Card Bank of Ga*, 129 F.3d 943 (7th Cir. 1997) (finding that prevailing plaintiff in TILA is entitled to statutory damages and reasonable attorney's fees).

### 1. TILA Provides Damages for Both Disclosure Violations and Rescission Violations

Prior to 1982, TILA provided for statutory damages only for violations of disclosure requirements.[1] In 1982, Section 1640 was amended to also provide statutory damages to obligors whose creditors refused to recognize their right to rescind under Section 1635, thereby entitling plaintiffs to damages not only for initial disclosure violations but also for later rescission violations of the same transaction. *Aquino*, 606 F.Supp. at 510–511. "Congress is certainly aware of the difference between disclosure violations and rescission violations" and the purpose of the 1982 amendment was to "confirm .. that obligors are entitled to statutory damages for rescission violations even when their claims for disclosure damages are time-barred." *Id.* at 510.

Pursuant to the TILA, an obligor who has previously collected damages for a disclosure violation can later discover a more egregious violation and, more than two years after the first lawsuit, rescind the transaction. Although Congress enacted a one year statute of limitations for disclosure violations, it permitted rescission up to three years from the date of the underlying transaction. Not per-

---

1. Prior to 1982, Section 1640(a) provided:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to

that person is liable to that person in an amount equal to the sum of (1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000.

mitting an additional recovery of statutory damages for a subsequent violation of § 1635(b), however, would severely undermine a creditor's incentive to honor a valid rescission demand. Yet Congress explicitly allowed for rescission suits after disclosure suits and explicitly provided a statutory damages penalty for rescission violations.

*Id.* at 511 (citations omitted).

## 2. TILA as Amended in 1995 Governs Rescission Damages

 Prior to 1995, § 1640 provided for statutory damages in the amount of twice the finance charges, with a maximum of $1,000 and a minimum of $100. The 1995 amendment was designed to establish a more generous minimum and maximum for certain secured transactions. *Strange,* 129 F.3d at 947. For those credit transactions secured by real property or a home, "subsection (A)(iii) [now] establishes a floor of $200 and a ceiling of $2,000." *Id.* Because Plaintiffs pray for damages only for rescission violations on or after August 21, 1997, the statute, as amended, governs any damages award. *Aquino,* 606 F.Supp. at 506 n. 2. (because plaintiff's notice of rescission took place after the effective date of the 1982 amendment, the violations relating to the rescission are governed by the statute as amended).

 It is also clear from the plain language of the statute that damages are to be assessed for each transaction. *Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295, 1308 n. 24 (D.Del.1990). Because three separate transactions are involved, Plaintiffs are entitled to $6,000 in statutory damages.

## 3. Damages Are Mandatory

 Damages are mandatory for a technical violation, even if the plaintiff suffers no actual damages. *Cowen v. Bank United of Tex. FSB.,* 70 F.3d 937, 940 (7th Cir.1995) ("Ordinarily one cannot seek damages ... unless one has suffered a loss, but the Truth in Lending Act allows a monetary recovery even if the failure to disclose ... caused the borrower no

harm."); *Purtle v. Eldridge Auto Sales, Inc.,* 91 F.3d 797, 801 (6th Cir.1996) (agreeing with the reasoning of the Fifth Circuit Court of Appeals and the Eighth Circuit Court of Appeals that "once a court finds a violation of the TILA, no matter how technical, the court has no discretion as to the imposition of civil liability." *Id.*)

## 4. Damages Are Provided For Disclosure Violations if Filed Within One Year, and For Rescission Violations if Exercised Within Three Years

 A plaintiff is entitled to statutory damages for a disclosure violation if the action for damages is brought within one year of the violation. A plaintiff is also entitled to statutory damages for a rescission violation if the plaintiff exercises his right to rescind within three years.

The failure of a lender to properly act on a rescission is a new violation separate and distinct from the disclosure violation that gave rise to the right to rescind. Thus, if a consumer asserts its right to rescission within the one year statute of limitations for misdisclosures under § 1640, and the creditor refuses to honor that rescission, the creditor becomes liable for the statutory penalties under § 1640 for both the misdisclosures and for the failure to rescind.... In addition, under § 1635, the consumer is relieved of liability for finance and other charges, and the security interest taken on the consumer's principal dwelling becomes void. If the consumer asserts its right to rescission after the one year statute of limitations for misdisclosures under § 1640 but within the three year limitation under § 1635, and the creditor refuses to honor that rescission, then the creditor is liable for the statutory penalties under § 1635 only for the failure to rescind, ... and under § 1635, the consumer is relieved of liability for finance and other charges, and the security interest becomes void.

*Wright v. Mid–Penn Consumer Discount Co.,* 133 B.R. 704, 708–9 (Bankr.E.D.Penn. 1991). Thus, because Plaintiffs asserted their right to rescind more than one year after the disclosure violation, they are entitled to statutory damages only for the rescission violations.

Defendants argue that statutory damages are time barred because of the one year limitation period in 1640(e) to bring an action for damages. Defendants claim that because the action for violations of TILA were filed on August 25, 1997 for violations occurring on February 11, 1995, July 10, 1995, and July 15, 1995, a time frame in excess of one year, statutory damages are barred. Defendants misinterpret the statute. Section 1640 also allows damages for rescission violations, not simply for disclosure violations, as explained above. Thus, Plaintiffs are not precluded from bringing a damages action for rescission violations.

### 5. Defendants Have Violated Disclosure Requirements and Plaintiff's Right to Rescind

The obligations of a creditor upon the exercise of an obligor's right to rescind are clearly spelled out in the TILA.

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by the court.

15 U.S.C.A .. § 1635(b) (1998).

This Court has found that Defendants violated their duty to disclose information and committed a technical violation of TILA. *Clay v. Johnson,* 22 F.Supp.2d at 842. Furthermore, this Court found that Plaintiffs properly and timely exercised their right of rescission, and that Defendants have no viable affirmative defenses. *Id.* Based on these findings, this Court granted partial summary judgement to Plaintiffs on the issue of liability. *Id.* at 843.

Defendants did not comply with their obligations upon the Plaintiff's exercise of their right to rescind as outlined in § 1635(b). By refusing to honor Plaintiff's rescission requests, Defendants have committed rescission violations, which entitle Plaintiffs to statutory damages. In this case, Plaintiffs entered into three separate transactions dated February 11, 1995, July 10, 1995 and July 15, 1995. Each of the transactions contained disclosure violations, for which Plaintiffs have a right of rescission. Subsequently, the Plaintiffs properly and timely exercised their right of rescission on all three transactions on August 21, 1997. On August 25, 1997 Plaintiffs filed this suit. On the next day, Ree Clay filed for Bankruptcy under Chapter 13 of the Bankruptcy Code.

### 6. Plaintiffs Are Entitled to Damages for Rescission Violations, Not Disclosure Violations

█ Because the disclosure violations occurred more than one year prior to the

filing of this lawsuit, this Court is precluded from assessing statutory damages as they relate to disclosure violations. *Wright*, 133 B.R. at 708–9. However, these disclosure violations gave Plaintiffs the right to rescind within three years pursuant to § 1635(f). The TILA limits statutory damages to twice the finance charge with a minimum of $200 and a maximum of $2,000. In the case at hand, twice the amount of the finance charge for each transaction is in excess of $2,000. Therefore, Plaintiffs are entitled to $2,000 statutory damages for each of the three rescission violations, for a total of $6,000.

## B. PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEY'S FEES.

In addition to statutory damages, Plaintiffs are entitled to reasonable attorney's fees under TILA. Section 1640 provides,

"[A]ny creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title ... with respect to any person is liable to such person in an amount equal to the sum of—

. . . .

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court."

15 U.S.C.A. § 1640(a)(3) (1998).

"The language in section 1640(a) unequivocally entitles a successful Truth–in–Lending plaintiff to an award of attorney's fees, and leaves only the amount of the award to the court's discretion." *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 (1st Cir.1990). *See also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262 n. 34, 95 S.Ct. 1612, 1624 n. 34, 44 L.Ed.2d 141 (1975) ("[o]ther statutes which are mandatory in terms of awarding attorneys' fees include ... the Truth in Lending Act, 15 U.S.C.

s1640(a)"); *Strange*, 129 F.3d 943 (awarding reasonable attorney's fees and statutory damages).

Although the Seventh Circuit has not ruled directly on this point, it has analogized the attorney's fees provision in the TILA to that of the parallel provision in the Fair Debt Collection Practices Act ("FDCPA"), a statute with identical language. *Zagorski v. Midwest Billing Serv. Inc.*, 128 F.3d 1164, 1166 n. 3 (7th Cir. 1997). The Seventh Circuit has held that it is in agreement with the Second Circuit that the award of attorney's fees to a prevailing plaintiff in a FDCPA action is mandatory. *Id.* In support of this holding, the Seventh Circuit, in its reasoning, mentions that the First Circuit in *de Jesus* has held that attorney's fees to a successful plaintiff in a TILA case are mandatory, thus implying that it would rule in a similar fashion should the occasion present itself. *Id.*

It is a "settled proposition that congressional goals underlying the Truth–in–Lending Act include the creation of 'a system of private attorney generals' who will be able to aid the effective enforcement of the Act." *Sosa v. Fite*, 498 F.2d 114, 121 (5th Cir.1974). To effectuate this goal, Congress has provided for mandatory fees to all successful plaintiffs, realizing that "most TILA plaintiffs are not 'model borrowers.'" *Semar v. Platte Valley Fed. Sav. & Loan Assoc.*, 791 F.2d 699 (9th Cir. 1986). "Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions." *Id.* Thus, because the "attorney's fees provision is phrased in mandatory, rather than discretionary terms, it is evident that fees may be denied a successful plaintiff only in the most unusual of circumstances" such as bad faith, obdurate conduct, unjust hardship, or special circumstances. *de Jesus*, 918 F.2d at 234 & n. 4. Prevailing plaintiffs are entitled to attorney's fees regardless of the amount of recovery

awarded, *In re Pine*, 705 F.2d 936, 938 (7th Cir.1983) and regardless of whether the plaintiff suffered actual damages. *Purtle*, 91 F.3d at 802.

■ The time limitation to bring an action for attorney's fees under § 1640 is the same limitation previously discussed for statutory damages. Plaintiffs are entitled to reasonable attorney's fees when they exercise their right to rescind within three years and obtain rescission. *Semar*, 791 F.2d at 706; *Aquino*, 606 F.Supp. at 509–510.

Defendants are under the mistaken impression that, because the disclosure violation occurred in excess of one year prior to the filing of this suit, Plaintiffs are time barred by the one year limitation period, and that rescission is the only remedy available to Plaintiffs. This simply is not the case.

The Fifth Circuit addressed the interplay of the rescission provision as set forth in section 1635 and the civil penalty provision provided in section 1640.

[I]t is unsurprising that the rescission provision of the Truth–in–Lending Act does not address the issue of attorneys' fees, for that section, unlike the civil penalty provision of section 1640 which does allow for such fees, does not even contemplate the necessity of judicial intervention to effect rescission. On the contrary, the section creates legal remedies which have binding legal effect absent court action. Thus, under section 1635, a debtor's notice of rescission operates ipso facto to abrogate the contract, without the necessity for judicial acquiescence or ratification. Section 1640, on the other hand, provides for a system of monetary penalties which can only be implemented by the courts, hence the relevance of litigation costs in enforcing civil penalties was abundantly clear to Congress. In sum, [the Plaintiff] has been forced to resort to federal court only because the creditors refused to recognize and abide by the plain operation of the rescission remedy, which should have been afforded self-operating

effect without the need for judicial involvement.

*Sosa*, 498 F.2d at 121–122.

■ In summary, the actions in the rescission provision are self help remedies, designed by Congress to be carried out by a creditor and debtor without any need for lawyers, lawyers fees or judges. A creditor may choose not to acknowledge a debtor's right to rescind, however, he does so at its own peril. If the debtor is then forced to bring a federal action to enforce his right to rescind, and if the debtor then prevails in that subsequent lawsuit proving that he properly exercised his right to rescind due to non-disclosure, then the creditor has not only violated TILA for failure to disclose, but also for failure to recognize a rescission as outlined in 1635(b). In either case, defendants are liable for reasonable attorney's fees.

## C. THE COURT HAS DISCRETION TO DETERMINE REASONABLE ATTORNEY'S FEES.

■ Although the award of attorney's fees are mandatory, the amount of the award must be reasonable, as determined by the court. *Semar*, 791 F.2d at 706; *de Jesus*, 918 F.2d at 235. The court must follow well known guidelines of reasonableness, and failure to follow the guidelines is an abuse of discretion. *Semar*, 791 F.2d at 706.

■ The Seventh Circuit has upheld the application of the "lodestar" method in determining reasonableness of attorney's fees. Under this method, "[t]he fee claimant bears the burden of substantiating the hours worked and the rate claimed. Once he has done so . . ., the district court may increase or decrease the amount in light of the [*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ] factors, which include the time and labor required, skill needed, amount involved and results obtained, time limitations imposed by the case, experience, and reputation and ability of the lawyers."

*Strange,* 129 F.3d at 946 (citations omitted). The court must accompany any modifications with a "concise but clear explanation." *Id.* Furthermore, the court may not reduce an award of fees by an arbitrary amount simply because they appear to be excessive. *Id.*

In *Strange,* the Seventh Circuit upheld a district court's rejection of $21,743.75 in attorney's fees on a $100 statutory damage claim, finding the 123 hours in fees requested unreasonable "in light of the stakes involved in the litigation and the time and labor that reasonably should have been expended." *Id.* The appellate court upheld the reduced amount of $3,000 in attorney's fees, finding that it was "not an unfounded, arbitrary reduction based on the court's subjective view of what might be excessive." *Id.*

In *In re Pine,* 705 F.2d 936, 939 (7th Cir.1983) the Seventh Circuit found that an award of attorney's fees in the amount of $2,500 for 40 hours work was not excessive, even though only $1,000 in statutory damages was actually at stake in the litigation. Although the court stated that "[t]he amount of money at stake in a case is always highly relevant to the reasonableness of an attorney's fee request", the court rejected the argument that Congress intended to limit the attorney's fee awards to the amount of damages obtained. *Id.* The Seventh Circuit pointed out that its decision was in line with its holding in *Mirabal v. General Motors Acceptance Corp.,* 576 F.2d 729 (7th Cir.1978), in which the court upheld a district court's reduced award of $2,000 in attorney's fees based on a $2,000 statutory damages recovery. The *Mirabal* court agreed with the district court's findings that 350 hours of an attorney's time was "clearly out of proportion with the amount in controversy" and that "[t]o grant attorney's fees greatly in excess of a client's recovery requires strong support from the circumstances of the particular case." *Id.* at 730.

Other circuits have used similar guidelines in determining the reasonableness of attorney's fees:

The factors are the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*Semar,* 791 F.2d at 706.

Because the question of the amount of attorney's fees was not discussed at trial, the Court will schedule this issue for oral argument.

## D. DEFENDANTS ARE ENTITLED TO THE REASONABLE VALUE OF THE INSTALLED HOME IM-PROVEMENTS.

Defendants are entitled to $38,000 as the reasonable value of the home improvements that were installed. This amount is reduced by any amount Plaintiffs have paid to date on the three transactions, which is approximately $20,000. This amount is also reduced by the statutory damages of $6,000. Therefore, Defendants are still owed approximately $12,000 which will be paid pursuant to the bankruptcy payment schedule.

 The TILA provides that, upon rescission, the creditor must "return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest." 15 U.S.C. § 1635(b). After the creditor has first fulfilled these obligations, the "obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value." *Id.*

■ Absent evidence to the contrary, the reasonable value of property is the contract price. *Rowland v. Magna Millikin Bank of Decatur,* 812 F.Supp. 875, 881 (C.D.Ill.1992); *Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295, 1307 (D.Del.1990). The Court heard testimony from Plaintiff's expert, who testified that the estimated value for the job, including a 5–15% profit to the general contractor, was $12,400. Plaintiff's expert further testified that it would cost an estimated $5,000 to repair the existing work to bring it up to the standards of workmanlike quality. The Court finds it incredible that the estimated value of all the mentioned work, including a 5–15% profit margin to the contractor, can possibly be only $12,340. If this were correct, Mr. Bilfeld would be charging a 224% premium on his product, which this Court finds difficult to believe.

The Defendant presented testimony by Mr. Bilfeld that the reasonable value for the job was $40,000, the contract price. He further testified that he subcontracts all the work and that the subcontractors are responsible for repair work if there are any customer complaints, otherwise he will not use them again. Therefore, the additional cost to Mr. Bilfeld to address customer complaints is nothing. The Court found Mr. Bilfeld's testimony more credible than that of Plaintiff's expert, considering the large amount of work that was performed.

Plaintiffs testified that they contacted Mr. Bilfeld through a referral from a friend for whom Mr. Bilfeld had done some home improvements. They did not obtain estimates from other contractors, and continued to enter into new contracts with the Defendants over the course of several months. These contracts were entered into freely at arms length. Plaintiffs are educated and intelligent individuals who agreed that the reasonable value of the work, if totally completed, was $40,000. This understanding was manifest throughout the agreements they initiated.

Having found the testimony of Mr. Bilfeld more credible than the testimony of Plaintiff's expert, and that Plaintiffs freely entered into arms length transactions with Defendants, the Court finds that the $40,000 contract price is the most appropriate starting point from which to determine a reasonable value.

Plaintiffs rely on *Gaines v. Phills,* 389 So.2d 445 (La.App. 2d Cir.1980) and *Pearson v. Colonial Financial Serv.,* 526 F.Supp. 470 (M.D.Ala.1981) for the argument that the Court should disregard the contract price and find the reasonable value of the improvements to be that testified to by Plaintiffs expert. Plaintiffs reliance is misplaced. In *Gaines,* the original contract price was $19,000. The homeowners terminated the contract prior to the completion of the work. Thus, the court used the estimated increase in market value of the home to arrive at a reasonable value of $4,050 for the work that was performed. *Gaines* is clearly distinguishable because the work was completely performed and Plaintiffs executed completion certificates. In *Pearson,* the court gave no reason for determining that the reasonable value was $3,000 instead of the $5,400 contract price, other than that there was "conflicting testimony." *Pearson,* 526 F.Supp. at 474. This Court respectfully declines to follow suit. If Plaintiffs were unhappy with the contract price, which they now claim is over three times the fair market value, they should have either negotiated the price up front with the Defendants or procured estimates from other contractors. Market value is typically defined as what a willing buyer is willing to pay to a willing seller at an arms length transaction. Plaintiffs were willing buyers, Defendants were willing sellers. The transaction was at arms length. The Court sees no reason to intervene.

■ Although the right to rescind is statutorily granted, rescission is an equitable remedy, the purpose of which is to return the parties as nearly as possible to the positions they were in before they

entered the transaction. *Cox v. First Nat'l Bank of Cincinnati,* 633 F.Supp. 236, 240 (S.D.Ohio 1986). As such, it is subject to equitable considerations "to avoid the perpetration of stark inequity." *Brown v. Nat'l Permanent Fed. Sav. & Loan Assoc.,* 683 F.2d 444, 448 (D.C.Cir.1982). Thus, "when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Id.*

■■■ The TILA was amended to expressly provide for courts to consider traditional equitable notions in applying the statutory grant of rescission. The last sentence of § 1635(b) now reads as follows: "The procedures prescribed by this subsection shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(b). The Senate Report discussing this provision states:

> Upon application by the consumer or the creditor a court is authorized to modify the section's procedures where appropriate. For example, a court might use this discretion in a situation where a consumer in bankruptcy ... proceedings is prohibited from returning the property. The committee expects that the courts, at any time during the rescission process, may impose equitable conditions to ensure that the consumer meets his obligations after the creditor has performed his obligations as required under the act.

S.Rep. No. 96–368, 96th Cong., 1st Sess. 29 (1979) (quoted in *Brown,* 683 F.2d at 447 n. 2.)

In applying this provision, the Sixth Circuit has held that plaintiffs who sought to rescind a home improvement contract because of a TILA disclosure violation were entitled to rescission. *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir. 1980). However, in order to most nearly put the parties back into the condition they were in prior to the transaction, the court conditioned the rescission upon the return by the plaintiffs of the reasonable value of the property received by them. *Id.*

The Court finds that Plaintiffs are entitled to rescission, however the court conditions the rescission upon the repayment by the Plaintiffs to the Defendants of $38,000 for the reasonable value of the improvements, less any amounts paid to date, less $6,000 in statutory damages owed to Plaintiffs by Defendants. The security interest must remain in place until the obligation is fully paid.

### CONCLUSION

For the foregoing reasons, **the Court awards Plaintiffs $6,000 in statutory damages. Plaintiffs are liable to Defendants for $38,000 for reasonable value of improvements, less any amounts paid to date on the contracts, less $6,000 in statutory damages. The issue of the amount of attorney's fees will be set for oral argument. A final judgement will be entered on the issue of damages after attorney's fees are decided.**